CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY

*v.*

MARY J. LEE, Admx.

1. NEW TRIAL—*on the evidence.*   Under our system of practice, this court will not reverse a judgment and set aside a verdict unless compelled from the want of evidence or its too manifest weakness and insufficiency, to sustain the finding.   Even if the evidence is slight, it will not require a reversal.   This court will not lightly disturb the finding of a jury, whose province it is to find the facts, when the judge trying the case approves of the verdict by refusing a new trial.

2. NEGLIGENCE—*collision at road crossing.*   Where a person, while attempting to cross a railroad track with his team at a regular highway crossing, was struck by an approaching engine and killed, and it appeared that the company allowed the sight along its track to be obstructed by a house, brush and weeds

upon its right of way, and failed to give the statutory signals on the train approaching the crossing until it was too late to avail, and the train was running at unusual speed to make up time, it being behind time, it was *held*, that the negligence of the company was gross, and even if deceased was guilty of negligence in failing to listen or look for a train out of its time, such negligence was slight, and the company was liable to an action by the representative of the deceased.

3. Res Adjudicata—*former decisions by this court.* The reversal of a judgment by this court, and awarding a new trial, can not be pleaded in bar of a second recovery. The principles of law announced by this court upon a certain state of facts, in reversing, are not binding except upon the same state of facts. Upon substantially the same facts, this court would be bound to re-apply the same principles and legal rules, or overrule the former opinion.

4. Practice in Supreme Court—*can not look to evidence not presented in the court below.* This court is required to try a case brought before it, on the record presented in the particular case, and can not look to the transcript of the record in a former case between the same parties on a former appeal, to determine questions of fact.

5. Evidence—*whether negative.* Where witnesses near by a passing train, with their attention directed to the fact, testify, positively, that no bell was rung or whistle sounded until the instant of a collision, their evidence is not negative in its character.

6. Railroad—*relative rights and duties at highway crossing.* If a railroad crosses a common road on the same level, those traveling on either have a legal right to pass over the point of crossing, and to require due care of those traveling on the other to avoid a collision. While a passing train, from its force and momentum, will have the preference in crossing first, yet it is bound to give due warning, so a person with his wagon may stop and allow it to pass, and to use every exertion to stop if the wagon is inevitably in the way, and such warning must be reasonable and timely. Its speed should not be so great at such a crossing as to render unavailing the warning of its bell or whistle.

Appeal from the Circuit Court of Henderson county; the Hon. Arthur A. Smith, Judge, presiding.

Messrs. Miller & Frost, for the appellant.

Messrs. Douglass & Harvey, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

Since this case was previously before this court, the plaintiff's declaration has been amended, and additional proofs introduced on the last trial.

The evidence shows that about the 10th of November, 1869, a collision occurred between an engine of appellant and the team and wagon of Darius B. Lee, whilst being driven by him on a highway crossing appellant's railroad. Lee was killed by the collision, and his administratrix sues to recover for loss, under the provisions of the statute. On a trial in the court below, as on each of the previous trials, plaintiff recovered a verdict, and the court, after overruling a motion for a new trial, rendered a judgment on the verdict, and the company appeals.

When the first and second trials were had, the only negligence averred in the declaration was, the failure to sound a whistle or ring a bell at the crossing where Lee was killed. In the counts since filed the additional negligence averred is, that the company permitted a building to stand upon its grounds near the track, and suffered weeds and brush to grow and stand upon its grounds, so as to obstruct the view of deceased as he approached the road, and that the train was run at an unusually high rate of speed, and no bell was rung or whistle sounded, and that deceased was killed by reason of such negligence.

On the last trial, there were three additional witnesses, who testified they were in a position to hear, and had an opportunity to hear, a whistle sound or a bell rung, but did not, and they believe no such signal was given.

From the entire evidence, we are clearly of opinion the train was behind time, and was running at a very high rate of speed when the accident occurred; and there seems to be no doubt the view of the approaching train was obstructed by the house, brush and weeds, until a person was almost on the track; and the evidence was conflicting as to whether the bell was rung or the whistle sounded until the instant the collision occurred. The jury found the signal was not given.

The speed of the train, the fact that it was behind its regular time, and the obstruction to the view by the house, brush and weeds, if not conceded, are established, we think, beyond

doubt; and the principal disputed fact is, whether the signal was given. We are satisfied the evidence, as it stands in this record, warranted the jury in reaching the conclusion that it was not given.

The policy of our system of jurisprudence is, that, as the jury system was established and is maintained for the finding of disputed facts at common law, it is the province of the jury to do so, uncontrolled by the court, if the evidence tends to support their finding. It is only by force of our statute that we have power to review their finding, and, under long established practice, we will not, unless compelled from the want of evidence, or its too manifest weakness and insufficiency to sustain the finding, reverse because the finding is against the evidence. Here are three juries who have concurred in finding negligence on the part of appellant. If there was any inherent weakness in the evidence, we could hardly presume that such a number of ordinarily intelligent men would all have failed to detect it. Even if it appeared to us to be slight, still that does not require a reversal. We will not lightly disturb the finding of a jury, whose province it is to find facts, and the circuit judge who heard the evidence and approved the finding by refusing to set aside the verdict. Hence, we must refuse to set aside the verdict because it is not sustained by the evidence.

There is no error in the instructions. They announce the law correctly, and this leaves it purely a question of fact for the determination of the jury, and we must decline to interfere.

We find the law clearly and well stated in the case of *The Continental Improvement Co.* v. *Stead,* U. S. Supreme Court, 5 Otto, 161. It was said: "If a railroad crosses a common road on the same level, those traveling on either have a legal right to pass over the point of crossing, and to require due care of those traveling on the other to avoid a collision. Of course, those mutual rights have respect to other relative rights subsisting between the parties. From the character and momen-

tum of a railroad train, and the requirements of public travel
by means thereof, it can not be expected that it shall stop and
give precedence to an approaching wagon to make the cross-
ing first.    It is the duty of the wagon to wait for the train.
The train has the precedence and right of way, but it is bound
to give due warning of its approach, so that the wagon may
stop and allow it to pass, and to use every exertion to stop if
the wagon is inevitably in the way.    Such warning must be
reasonable and timely, but what is reasonable and timely warn-
ing may depend on many circumstances.    It can not be such,
if the speed of the train be so great as to render it unavailing.
\* \* \*  The speed of a train at a crossing should not be so
great as to render unavailing the warning of its whistle and
bell; and this caution is especially applicable when the sound
is obstructed by winds and other noises, and when intervening
objects prevent those who are approaching the railroad from
seeing a coming train.    In such cases, if an unslackened speed
is desirable, watchmen should be stationed at the crossing.

" We think the judge was perfectly right, therefore, in hold-
ing that the obligations, rights and duties of railroads and
travelers upon intersecting highways are mutual and recipro-
cal, and that no greater degree of care is required of the one
than of the other; for, conceding that the railroad train has
the right of precedence of crossing, the parties are still on
equal terms as to the exercise of care and diligence in regard
to their relative duties.    The right of precedence referred to
does not impose upon the wagon the whole duty of avoiding a
collision.    It is accompanied with, and conditioned upon, the
duty of the train to give due and timely warning of approach.
The duty of the wagon to yield precedence is predicated upon
this condition, and both parties are charged with the mutual
duty of keeping a careful lookout for danger."

And in the same case the court below was asked to instruct
for the company, that " the undisputed testimony in the case
shows that the plaintiff was acquainted with the character of
the crossing; that he had frequently traveled it, and, on some

previous occasions, had stopped to look and listen before going on the track; that upon this occasion he went with his team and wagon on the track without taking any precaution to ascertain whether a train was coming from the north or not; that he did not even turn his face northward along the track, in the direction from which the train was coming, until it was too late for him to stop or turn back; that his wagon was making considerable noise as it moved over the frozen ground; that his hearing was, to some extent, impaired, but he did not stop to listen before going upon the track. Upon this state of facts, the plaintiff is chargeable with such negligence contributing to the accident as deprives him of any right of action."

The court say, that even if the evidence had been so free from doubt as to establish the propositions contained in the instruction, still, it was discretionary with the judge to give it as asked, or in a more general form, leaving it as a question of fact for the jury to say whether the plaintiff was guilty of carelessness, from the evidence; and the court hold, that " if the place was dangerous, and the approach to it by a train obscured, he should have proceeded with more caution and circumspection than if the crossing were in an open country;" nor, at least without the use of means that common prudence would dictate to ascertain such fact; "but," the court say, "as this was not a regular train, or on usual time, the same degree of caution would not be required on his part, or such as if it were a regular train, and on usual time."

This instruction was asked by the company, and refused by the court: "It is the duty of every one, approaching with his wagon and team along a highway to the crossing of a steam railroad, to listen, and to look both ways along the railroad before going upon it. If, by the reason of the ground or other obstructions, or if, by reason of a defect of his sense of sight or of hearing, he can not determine, with certainty, whether or not a train of cars is approaching, without stopping, and, if necessary, going in advance of his team to exam-

ine, it is his duty to do so. If, in such case, he goes upon the track without taking such precaution, he does so at his own peril, and can not recover if injury results." Of this instruction the court say: "Here is no assumption of facts, * * * but it states the duty of persons approaching a railroad with wagons and teams in a more absolute and unqualified form than we think admissible. It states such duty with the rigidity of a statute, making no allowance for modifying circumstances, or of accidental diversion of attention to which the most prudent and careful are sometimes subject, and assuming, in effect, that the duty of avoiding collision lies wholly, or nearly so, on one side."

The law as announced in this case is entirely applicable to the case at bar; and if conceded to be the law, and it must be, even where comparative negligence is not admitted, it must govern this case; and when that rule is applied, even if it could be conceded that deceased in this case was guilty of negligence, it was slight and that of the company was gross. Here were obstructions preventing, to some extent at least, a view of the approaching train; it was out of time, running at a fearful rate of speed, as is shown by the terrible manner in which Lee's body was mangled, and the distance its fragments were carried and strewn along the track, and the inability of the engineer to stop, until the train had run between a fourth and a half a mile; no whistle sounded or bell rung; no effort to check its rate, and no watchman stationed at the crossing to warn persons of approaching danger—all of which are held by the opinion quoted above to be negligence on the part of the company. As held in that case, and by all courts, it was for the jury to find whether there was negligence, and the jury have found that the company was guilty of negligence, and the finding is abundantly sustained by the evidence. To hold otherwise would be to impose all the duty of care and vigilance on the person crossing the railroad track with a wagon and team, and to absolve the company from all care on its part. The evidence shows the company did nothing to avoid

the accident, but, on the contrary, omitted the observance of every duty required by the law, and still claim immunity for the omission.

But it is urged, that the last trial and judgment in this court is conclusive on appellee, as the law and the facts are the same, and should be regarded as *res adjudicata*. If the facts were the same in all essential particulars, if we may look outside of the record now before us to ascertain that fact, the question might be presented. But we are required to try the case on the record presented in the case, and we have no right to look to the transcript in that case to determine questions of fact in this case. We may review the finding of the jury on the evidence, but only on the evidence they heard, and on which they based their finding. We have no right to look outside of this record to determine whether their finding was correct or incorrect. There was no plea of a recovery in this court interposed in the court below, nor was such a plea interposed to this suit in this court, and if such a defense had been attempted, how could it have been presented as a bar to this recovery? The plea would have averred that appellee had recovered a judgment in the court below, and appellant had removed it to this court by appeal, and that on a trial, this court had reversed that judgment and remanded the case with an order for a *venire de novo*. Now, could any person say such a plea had any, the slightest elements of a bar to a recovery? We presume no one could say that it had. But we are aware of no rule of practice that authorizes such a plea in this court.

When the case was previously before us, we, of course, in its decision, announced legal rules which were applicable to the facts appearing in that record, and, unless overruled, the court would be bound to apply the same rules to the same facts. But we are not aware that because the evidence induced the court to find certain facts, we should, on further argument and more mature reflection, be estopped by the previous finding from reaching a different conclusion even on the same

evidence.  Mere consistency might require it, but a sense of justice and right would make no such demand, and no such rule can ever prevail when the evidence is materially different. To so hold would be to stifle, instead of to promote, justice. This position is, on the record on which the trial is being had, wholly untenable.  The question sought to be raised is not presented by the record.  But if we may go beyond the record, and look into the transcript when the case was brought before us at a former term, then we should find the evidence, as well as the pleadings in the court below, materially different, as now presented to this court.  We may look to the opinion filed in the case when previously before us, to see what questions of law were decided, but not to see the evidence, as that is in the transcript filed in the case now before us.  To that alone can we look for the evidence on which the verdict was found, and we must say whether the verdict is sustained by the evidence now before us, and we have no right to go outside of this record to determine that question.  This record shows, if we may look at the transcript previously filed, that there were three additional witnesses examined on the last trial, who were in a position to see, hear and know whether a whistle was sounded or a bell rung. .  They were looking at the train when the collision occurred, and their attention was directed to what was transpiring, and they are sure no bell was rung or whistle sounded until the instant the collision occurred, when the whistle called for breaks.  One of these witnesses was within five rods of the place of the accident and saw and heard all that transpired.  This evidence, to our minds, lends great additional weight in support of appellee's case.  In fact, the evidence of these additional witnesses is almost conclusive, independent of the evidence of appellee's other witnesses. . Nor is their testimony negative in its character.  It is the evidence of witnesses whose attention was directed to what was transpiring, and who gave heed to all that occurred; they heard and saw it all, and had equal opportunity to see and hear what was done as appellant's witnesses, and their evidence is clear,

consistent and every way reasonable, and adds largely to the force of appellee's evidence when considered as a whole, and being so, it changes the whole case and renders it essentially different from what it was when last before us. It then follows, that the judgment then rendered does not, nor can it, control the decision of this case.

The train was behind time, and deceased can not be presumed to have known that fact. He may, and probably did, know the usual time for the train to pass this place, and if so, he had no reason to suppose a train would be approaching, especially as no whistle was sounded or bell rung to warn him of the approaching danger. Hence, the omission of some acts of precaution, which would have been required if he had been crossing at the usual time for the train to pass, would not be of as high a degree of negligence, as if omitted when or just before the train was due. He, in all probability, would have been more vigilant had he known, or supposed, the train had not passed.

On the other hand, the officers of the road knew, as we must presume, that there was a road crossing at that place, and that persons were accustomed to cross there at all times. They knew their train was behind time, and they must have known that persons then crossing would not be expecting the train, and hence the duty, independent of the statutory requirement, to give the required signal. Under the circumstances, we think its omission was gross negligence—so gross that, even if deceased was guilty of slight negligence, appellant is liable for the injury inflicted.

We see no sufficient reason for reversing the judgment of the court below, and it must be affirmed.

*Judgment affirmed.*

Mr. Justice Scott, dissenting: The facts in the present record are substantially as they were when the case was before us on a former appeal, and, according to authorities in this and other courts, that decision is conclusive of the rights of the parties.

For a fuller expression of my views, as to the merits of the case, reference is made to our former opinion, *Chicago, Burlington and Quincy Railroad Co.* v. *Lee,* 68 Ill. 576.