# ST. LOUIS, VANDALIA & TERRE HAUTE RAILROAD COMPANY

## v.

# CHRISTOPHER FAITZ.

*Railroads—Public Crossing—Gross Negligence—Failure to give Signals —Comparative Negligence.*

1. It is negligence for the servants of a railroad company to run a locomotive over any crossing at a public road without ringing a bell or sounding a whistle. It is gross negligence for them to do so at a crossing known to be unusually dangerous.

2. In the case presented, it is *held:* That the defendant was guilty of gross negligence; that the evidence supports the verdict for the plaintiff on the theory that the negligence of his son was in comparison slight, and that although his son was bound to look and listen for the train and to know that he was approaching a place of danger, he was not bound to abandon his other duties, as he had a right to presume that he would be warned by the proper signals if a train was approaching.

[Opinion filed June 7, 1887.]

APPEAL from the Circuit Court of Madison County; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Messrs. JOHN G. WILLIAMS and A. S. WILDERMAN, for appellant.

Although the appellant may have been negligent, yet if the appellee's servant in this case failed to exercise ordinary care to avoid the injury complained of, the appellee can not recover in this action. G. & C. U. R. R. Co. v. Jacobs, 20 Ill. 478, 488; C. & A. R. R. Co. v. Gretzner, 46 Ill. 74; C. & A. R. R. Co. v. Robinson, 8 Ill. App. 140; C. & R. I. R. R. Co. v. McKean, 40 Ill. 218; St. L., A. & T. H. R. R. Co. v. Manly, 58 Ill. 300; C., B. & Q. R. R. Co. v. Van Patten, 64 Ill. 510; C., B. & Q. R. R. Co. v. Van Patten, 74 Ill. 91; C. & A. R. R. Co. v. Jacobs, 63 Ill. 178; C., R. I. & P. R. R. Co. v. Bell, 70 Ill. 102; I. C. R. R. Co. v. Godfrey, 71 Ill. 500; C., B. &

Q. R. R. Co. v. Lee, 68 Ill. 576; I. & St. L. R. R. Co. v. Evans, 88 Ill. 63; C., B. & Q. R. R. Co. v. Harwood, 80 Ill. 88; C., B. & Q. R. R. Co. v. Johnson, 103 Ill. 512; C., R. I. & St. L. R. R. Co. v. Byam, 80 Ill. 528; Railroad Co. v. Houston, 95 U. S. 697; Schofield v. Railroad Co., 114 U. S. 615.

Every person of ordinary intelligence is bound to know that a railroad·crossing is a place of more than ordinary danger, and so should use, at such place, greater precaution to avoid injury than at a place of less hazard. It is the duty of persons about to cross a railroad to look about them, and to listen for any train that may be approaching, so as to prevent the danger of a collision. They must approach such a crossing as a dangerous place. C. & A. R. R. Co. v. Jacobs, 63 Ill. 178; I. C. R. R. Co. v. Baches, 55 Ill. 379; C. & N. W. R'y Co. v. Hatch, 79 Ill. 137; C., B. & Q. R. R. Co. v. Harwood, 80 Ill. 88; C. & R. I. R. R. Co. v. Still, 19 Ill. 499; C. & A. R. R. Co. v. Gretzner, 46 Ill. 74; C. & N. W. R'y Co. v. Dimick, 96 Ill. 43.

It is, as a general rule, culpable negligence to cross the track of a railroad at a highway crossing, without looking in every direction the rails may run, to ascertain whether a train is approaching—in other words, a person who fails to take such precautions fails to exercise ordinary care. C. & A. R. R. Co. v. Gretzner, 46 Ill. 74; C., R. I. & Pac. R. R. Co. v. Bell, 70 Ill. 102; I. C. R. R. Co. v. Goddard, 72 Ill. 567; C., B. & Q. R. R. Co. v. Harwood, 80 Ill. 89; L. S. & M. S. R. R. Co. v. Hart, 87 Ill. 529; Railroad Co. v. Houston, 95 U. S. R. 697; I. C. R. R. Co. v. Hetherington, 83 Ill. 510.

It was incumbent upon the appellee to allege and prove, not only that the appellant was negligent, but that his servant exercised due care to avoid the injury complained of; and unless he has done so, the judgment in this case must be reversed. The burden of proving both was upon him. Dyer v. Talcott, 16 Ill. 300; I. & St. L. R. R. Co. v. Evans, 88 Ill. 63; C., B. & Q. R. R. Co. v. Lee, 68 Ill. 576; C., B. & Q. R. R. Co. v. Damerell, 81 Ill. 450; I. C. R. R. Co. v. Godfrey, 71 Ill. 500; A. B. R. R. Co. v. Grimes, 13 Ill. 585; C., B. &

Q. R. R. Co. v. Johnson, 103 Ill. 512; City of Mendota v. Fay, 1 Ill. App. 418; C., B. & Q. R. R. Co. v. Gregory, 58 Ill. 272.

Messrs. KROME & HADLEY, for appellee.

WILKIN, P. J.   In March, 1884, appellee's son, about twenty-one years old, driving a team of two horses to·a farm wagon, attempted to cross appellant's track on a public crossing in Madison county, and was struck by a locomotive, himself and both horses being instantly killed, and the wagon and harness destroyed.

This suit is to recover damages for loss of the team, harness and wagon.   The cause has been twice tried in the Circuit Court of Madison County, the verdicts being substantially the same.

The first judgment was reversed in this court on errors not affecting the merits of the case.   The negligence charged in the declaration on the part of employes of appellant in charge of the locomotive, is a failure to ring a bell or sound a whistle before reaching the crossing at which the injury was done. At the point of collision the railroad track runs east and west. The public road crosses it at an angle of about 30° in a direction from northwest to southeast.   The track is considerable higher than the level of the public road, and is approached from the northwest by a narrow grade, extending back to a small culvert about 130 feet.   West of the culvert, at the time of the accident, willow trees had grown ten or fifteen feet high, obstructing the view westward.   As to whether or not these trees extended south on the right of way there is a conflict of evidence.   The locomotive was attached to a passenger train going east on its regular time, running on a slightly down grade, at the rate of thirty miles per hour.

Appellant's son was driving from the northwest.   The wagon was without a body, and he was sitting on the running gear, with his face to the east or southeast.   The public road was frozen and very rough.   The only persons who saw the team approach the crossing were the fireman on the locomotive, and appellee, who was driving another team, and was some two

hundred yards in rear of the son. They both swear that he did not stop before driving on the track, but neither was in a position to know whether or not he looked and listened for the train, and do not pretend to say, except as the fireman gives his conclusion from his conduct. It is conceded by counsel for the appellant, that in the conflict of evidence, the jury was warranted in finding that the bell was not rung nor the whistle sounded; also that so far as the obstruction to the view in approaching the crossing from the northwest is in controversy, the jury was justified in finding that fact against appellant. In fact, the sole ground upon which a reversal of the judgment is now urged, is for want of proof of due care on the part of the son of appellee, who was driving the team.

Numerous authorities are cited by counsel for appellant in support of the several propositions that, notwithstanding the negligence of the servants of appellant, the driver of the team must have exercised due care; that every person is bound to know that a railroad crossing is a place of more than ordinary danger, and so should use greater care to avoid danger from passing trains; that as a general rule it is culpable negligence to cross a railroad track at a highway crossing without looking in each direction of the rails, and listening for approaching trains; and that due care means ordinary care.

These propositions are certainly well settled by numerous decisions in this State, and by text writers. No one, we apprehend, will undertake to controvert them. No complaint, however, is made in this case, that the court below, either by its rulings on the admissibility of evidence or instructions to the jury, deprived appellant of or abridged in the slightest degree any of its rights under those rules of law. No exception was taken to the rulings on evidence, and the instructions given on behalf of appellant, to say the least, are most liberal in their enunciation of the law governing the case.

The only questions we have to deal with are of fact, and embraced in the two inquiries: Did the son of appellee exercise due care? or, Was the negligence of the servants of appellant, under all the circumstances, so gross as to entitle appellee to recover, notwithstanding slight negligence on the part of his son? In fact, this last inquiry is the only one

which need be considered, it being conceded in the absence of all explanation of the conduct of the unfortunate young man, except as can be gathered from the surroundings, that he was to some extent negligent. Was there gross negligence in the failure to ring a bell or sound a whistle before reaching that crossing?

In passing upon this question the nature of the crossing, obstructions to the view, the elevation of the track above the road, the grade by which it was approached, the fact that the crossing was approached by the train on a down grade, are facts which must be considered, and if these facts and circumstances rendered it a crossing of unusual danger to those passing it on the public road, the degree of diligence to be exercised in giving the required signals would be thereby increased. While the evidence is conflicting as to the extent of the obstruction to the view, the other facts are undisputed, and most of the witnesses speak of the crossing as being a dangerous one. The engineer, Mr. Mills, who was at the time in charge of the locomotive, says: "It is not an ordinary crossing. In summer time it is rather obscure, but in winter time it is not near so bad. Railroad men consider it a dangerous crossing and they always feel like they want to ring the bell or whistle. It is considered a more dangerous crossing than the majority of crossings along the road; that is the reason why we are so particular." When we come, then, to answer the question, was it more than ordinary negligence, or was it gross negligence to run over a crossing known to be dangerous, at a speed of thirty miles per hour, on a down grade, without giving any signal of the approach of the train, the answer would seem to be manifest. It is negligence to run over any public road crossing without ringing a bell or sounding a whistle. It is gross negligence to do so at a crossing known to be unusually dangerous.

The company is chargeable with notice of all the perilous circumstances of a crossing constructed by itself. C., B. & Q. R. R. Co. v. Payne, 59 Ill. 534, 541; R., R. I. & St. L. R. R. Co. v. Hellmer, 72 Ill. 235; C., B. & Q. R. R. Co. v. Lee, 87 Ill. 454; P., P. & J. R. R. Co. v. Siltman, 88 Ill. 532; W., St. L. & P. R'y Co. v. Wallace, 110 Ill. 114. We think the above

cited decisions of the Supreme Court, in cases not dissimilar as to the facts involved, sustain the finding that the servants of appellant were guilty of gross negligence in not giving the signals required by the statute before attempting to cross the public road. Some, at least, of the same decisions, are to the effect that there was not such negligence on the part of the driver of the team as should be held to defeat appellee's right to recover. The fact that he was going in nearly the same direction as the train, that his face was toward the east, that he was sitting near the ground and much below the track, giving him but a limited opportunity to see in the direction the train was coming, that the ground was hard and rough, causing the wagon to make more or less noise, placed him at a disadvantage to hear the motion of the train and the working of the locomotive; besides, he was in charge of a team on a narrow grade, and of necessity his attention was directed to it to some extent. Therefore, the fact that witnesses who afterward went to the same place on the public road to look for approaching trains and found no trouble in seeing and hearing them at a considerable distance before reaching the crossing, does not necessarily prove that he was guilty of negligence in failing to see or hear the one which caused his death.

It is true that he was bound to look and listen for the train and to know that he was approaching a place of danger, but he was not bound to abandon his duty in other matters about which he was engaged, stop his team or select some particular place where the view was not obstructed, and he had a right to presume that if a train should be then approaching, he would receive the proper warning by signals.

That negligence and comparative negligence are facts within the province of the jury is not questioned.

When it is once admitted that the evidence sufficiently shows that signals were not given, the verdict of the jury is supported by the evidence, on the theory that the negligence of appellant's servants was gross, as compared with that of appellee's son, which was slight.

The fact that a former jury found a similar verdict is not to be ignored.

*Affirmed.*