## James Hartley v. Chicago & Alton Railroad Company.

### Gen. No. 11,302.

1. RELEASE—*when, bars recovery for personal injuries.*  The effect of a release of a claim for personal injuries cannot be overcome in the absence of fraud in the execution thereof, where it appears that the plaintiff having ability to read, did not read the same.

Action on the case for personal injuries.  Error to the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding.  Heard in the Branch Appellate Court at the October term, 1903.  Affirmed.  Opinion filed October 4, 1904.

JAMES C. McSHANE, for plaintiff in error.

LEE & HAY, for defendant in error; WILLIAM BROWN, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This is an action to recover for personal injuries.  The case has been here before (90 Ill. App. 284) and its history is sufficiently stated in the opinion of the Supreme Court found in the 197th Ill. 440.  It was there held that whether the plaintiff assumed the risk of being injured through the negligence of other employees not fellow-servants within the rule, and whether if injured by a fellow employee he and that employee were fellow-servants, were questions which under the evidence the plaintiff was entitled to have submitted to a jury.

As now presented neither of those questions are before us.  The trial court directed a verdict and entered the judgment

for defendant from which this writ of error is prosecuted, solely on the ground that the plaintiff's cause of action was barred by a release in writing executed by the plaintiff. This release having been introduced in evidence, the plaintiff admitted that he signed it, but sought to show in rebuttal that it was procured by "misrepresentation, fraud and deception," as was averred in his replication to the defendant's plea setting up the release in bar. Evidence offered by the plaintiff to show that the release was so procured was excluded. It is contended in behalf of plaintiff, that in this the court erred; that the evidence admitted and the evidence offered and excluded, were sufficient to require the question whether the release was obtained by fraud to be submitted to the jury.

It appears from the plaintiff's testimony that he can read and write. He was twenty-eight years of age at the time of the accident. He testified in substance that he called on the defendant's division superintendent in the latter's office, and afterward on the general manager, Colonel Wood, telling the latter who he was and that he had been sent there by the division superintendent; that he asked Colonel Wood about his wages; that the paper was signed in Wood's office; that he did not read it; that Wood took him into the office of a Mr. Scrafford; that the latter "stood up, picked it off his desk and read it off fast in a mumbly kind of way;" that he—plaintiff—didn't understand what was in the paper; that he remembers about the amount of $280 he was to get, "and that is about all I remember." There was controversy between the parties over questions put by plaintiff's attorney. The court in reply to an objection by defendant's attorney ruled that "all that was said at that time about the execution of the paper in that interview may go in." The same view was again stated when the court told plaintiff's attorney that he might ask the witness "what took place in that room when the paper was signed, between him and other persons;" and again, the court said, "let him (the witness) tell how it happened he signed that paper." Plaintiff's attorney did

Hartley v. C. & A. R. R. Co.

not adopt the court's suggestion but questioned the witness as follows: "I will ask you whether at the time you signed your name on this paper you knew in any way that you were settling with the company for damages on account of the injuries." The court sustained an objection to the question, whereupon plaintiff's attorney made the following offer: "Well, I want to make this offer then, your honor. I offer to show that this man Hartley went down to Colonel Wood's office at the direction of this superintendent; he told the superintendent who he was and he came down there for wages; not the superintendent—the general manager, Wood; and Wood and he then talked about this; he explained how the accident happened and all about it, and Wood told him he didn't have any case against the company, and they wouldn't give him anything on that account, but they would pay him his wages as a matter of charity, and give him a job; that he sent him to a doctor to find out how long it would be before he would be able to go to work so that his wages could be estimated; that he went to a doctor and brought back to Colonel Wood a letter from the doctor that he would be able to work in four months from the accident; that the sum of $70 was the amount of the average pay of switchmen a month; that Wood told the man they would pay him $280 for four months' wages, and that he, Wood, then went into the other room and got Mr. Scrafford to write this thing up; that he brought it in there and Scrafford mumbled the thing over to him and told him to sign it; that he signed it thinking it was a receipt for his wages; but nobody ever said anything about a release at any time or place."

The Court: "Well, what took place after the paper was presented is competent on that question. The offer is overruled and denied." (Plaintiff excepts.)

The Court: "Ordinarily a man who can read and write is bound by the paper that he signs if he imprudently signs it without reading, because it is his own negligence to sign papers without reading them; but he may be tricked into signing a paper, although he can read, without reading it.

Now, if you can show that this man was tricked into sign-
ing this paper, without knowing what was in it, by any
trick that was played on him there, all right, go ahead and
do it."

Later after ruling out sundry questions, deemed irrele-
vant, the court said : "If he was told that the paper was
anything different from what it is, if there was any way
in which he was tricked into signing the paper without
looking at it, without reading it, let him tell the circum-
stances." When plaintiff's attorney asked the witness
"What did you think this paper was you signed," and the
question was objected to by the opposing attorney, the
court said : "That is not the question, what he thought;
what happened ? Let him tell what happened when he
signed the paper." The witness subsequently testified
that he did not remember hearing Scrafford read anything
about a release of claims for damages.

While the offer of proof which was denied includes the
statement that "nobody ever said anything about a release
at any time or place," the plaintiff himself testified that
the paper which he signed was read to him, although he
says it was read "fast, in a mumbly kind of a way," and that
he did not understand what was in it, except that he re-
members the amount of money he was to receive, and that
is about all he does remember. There is in his evidence
no hint of any "fraud touching the execution of the instru-
ment, such as misreading, the surreptitious substitution of
one paper for another, or obtaining by some other trick or
device an instrument which the party did not intend to
give." (George v. Tate, 102 U. S. 564.) If the instrument
was so read that plaintiff did not, as he says, understand it,
he was entirely at liberty and unhindered, so far as appears,
from reading it himself. It is not as if he were unable to
read. The paper was not, apparently, difficult to read. It
seems to have been on a printed form with the words
"Release of all claims" in large type at the head, where
it would seem impossible for any one before whom the
paper was laid for signature to fail to see them at a glance.

Neither in the testimony introduced nor in the offer to prove is there anything tending to show fraud·in the execution of the instrument, or that any trick or device was resorted to or any fraud or imposition practiced upon the plaintiff in procuring his signature and seal. If it be true that plaintiff believed he was signing only a receipt for money to be paid him as wages for the time until he should be able to work again, it is because he failed to use even ordinary care to ascertain the character of the instrument spread out before him when he signed, and was, so far as the evidence tends to show, self-deceived. See Leach v. Nichols, 55 Ill. 273–278; Mead v. Munson, 60 Ill. 49. In Upton v. Tribilcock, 91 U. S. 45, the court says: " It will not do for a man to enter into a contract and when called upon to respond to its obligations to say that he did not read it when he signed it or did not know what it contained. If this were permitted contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and if he will not read what he signs, he alone is responsible for his omission." We find no error in the exclusion of the evidence offered. Neither separately nor in connection with the evidence introduced did it tend to show fraud in the execution of the release, which in the absence of such proof is a bar to the plaintiff's action. C., R. I. & P. Ry. Co. v. Lewis, 109 Ill. 120–126. There was no error, therefore, in directing a verdict accordingly. The court in our judgment correctly stated and applied the law applicable.

It is urged that the Supreme Court held upon evidence identical with that under consideration that it was conflicting and presented a question for the jury. (197 Ill. 440–446.) It is argued that under this decision the competence of the evidence is to be regarded as *res judicata*. In this we cannot concur. The cause was remanded for a new trial. The testimony now under review stands by itself, and we cannot examine former records not now in evidence to ascertain what was under consideration in the opinion referred to. It is upon the record in this case we are re-

quired to pass judgment "and we have no right to look to the transcript in that case to determine questions of fact in this case." C., B. & Q. R. R. Co. v. Lee, 87 Ill. 454–461.

The judgment of the Superior Court must be affirmed.

*Affirmed.*