## Isabella H. Jackson v. The Security Mutual Life Insurance Company.

### Gen. No. 13,181.

1. . COMPROMISE—*when does not bar action for balance of liqui-dated demand.* The payment of a part of a fixed and certain demand which is due and not in dispute is no satisfaction of the whole debt, even where the creditor agrees to receive a part for the whole and gives a receipt for the whole demand.

2. SEALED INSTRUMENT—*when instrument so deemed.* A paper which contains a printed seal at the place provided for signature, when signed at such place becomes in law a sealed instrument.

3. SEALED INSTRUMENT—*how fraud in obtaining, must be availed of.* Fraud in the consideration of a sealed instrument is no defense at law. It can only be availed of by application to equity.

Assumpsit. Appeal from the Circuit Court of Cook county; the Hon. MERRITT W. PINCKNEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1906. Affirmed. Opinion filed June 25, 1907.

**Statement by the Court.** Appellant brought an action in assumpsit to recover from appellee a balance of $7,500 alleged to be due upon an insurance policy for $10,000 issued by appellee upon the life of William S. Jackson, her husband. She seeks also to recover $409.68 paid by her to an agent of the defendant during the lifetime of her said husband upon the alleged understanding on her part that such sum was due for unpaid premium on said policy, but which she now claims had in fact been previously paid by the deceased.

The defendant company pleaded in addition to the general issue a release by the plaintiff upon receipt of $2,500 of all claims under the policy; that the policy was issued in consideration of a written application by the insured which the defendant's officers after the death of the insured were led to believe and did believe contained divers representations that were

false; that in good faith believing and asserting that it had a complete defense to all claims under the policy, the defendant entered into an agreement with plaintiff to compromise said claims for $2,500 and that said sum was paid and the policy surrendered; that said sum was by defendant paid to and accepted by the plaintiff in full satisfaction of the several promises and of the money demanded in the plaintiff's declaration and that the action was not brought as the policy required within one year of the death of the insured.

There was testimony in behalf of the plaintiff tending to show that after the death of the insured she was called on by an agent of the defendant company who told her he came for the purpose of settling with her, that the company did not consider itself liable on the policy, that it had investigated the death of the mother and a sister of the insured and found the former died of cancer and the latter of consumption and the insured should have so answered, but did not do so in reply to questions put to him when he was examined prior to the issue of the policy, and that the insured had been sick in 1897 before he was injured and had failed to so state. She referred said agent to her attorney and subsequently signed the receipt on the back of the policy and received a draft for $2,500.

The plaintiff's attorneys offered to prove that at the time of the interviews with defendant's agent she did not know the cause of the deaths of the mother and sister of the insured, but accepted the draft and signed the release upon the representation of the agent that he was going away on the 1 o'clock train that day, it being then about noon, and that he thought if she did not take the $2,500 she would never get anything, that the president of the defendant company was a very stern immovable man; that she tried to communicate, before accepting the payment offered, by long distance telephone with one of the physicians who attended the mother of the insured in her last illness and had been

unable to do so. Plaintiff also offered to prove that the mother of the insured did not die of cancer or any malignant growth, but that the cause of her death was wasting away caused by grief and trouble, that the sister of the insured did not have nor die of consumption nor anything of that nature but the cause of death in her case was not known; and that the insured was always in good health after the insurance policy in controversy was issued. The evidence so offered was excluded by the trial court.

There was evidence in behalf of the defendant to the effect that its agent went to Streator and Ottawa to investigate the deaths of the mother and sister of the insured and told the plaintiff and her attorney that he had learned the claim on the policy was invalid and he did not believe the company would pay the policy. The said agent testified that he made the scroll in ink which appears about the word ''seal'' opposite the plaintiff's name where it is signed to the receipt and that he put it there before she signed the instrument. Plaintiff herself testified that the signature to the receipt was hers, but that the scroll was not around the word ''seal'' at the time she signed her name and that she never saw the scroll there until the instrument was produced in court and did not know it was there.

The date of the policy was November 18, 1897. The assured died, it is said, July 18, 1898, of cancer of the pyloris. The policy sued upon, the draft for $2,500 paid the plaintiff by the defendant and the receipt for $409.68 paid by plaintiff for balance alleged to be due as annual premium on the policy, were among the documents in evidence. The receipt or release relied upon by the defendant is upon the back of the policy and is as follows:

''Chicago, Ill., Nov. 18th, 1898.

Received of The Security Mutual Life Association, Twenty-five Hundred Dollars, in full release of all

claims under this policy No. 22819 on the life of William S. Jackson.

ISABELLA H. JACKSON,            [SEAL]
WIDOW OF WM. S. JACKSON,   [SEAL]
........................   [SEAL]

Beneficiary.
Witness: ADELOR J. PETIT,
            H. J. McCORMICK."

At the conclusion of all the evidence, the Circuit Court instructed the jury to find the issues for the defendant.

McCLELLAN & SPENCER, for appellant.

HENRY S. WILCOX, for appellee; FREDERIC W. JENKINS, of counsel.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

It is first urged in behalf of appellant that the acceptance by the creditor of a less sum of money than the amount due on a liquidated demand in payment of the whole amount will not constitute a defense to a suit for the balance, unless such payment is made and accepted in pursuance of an honest compromise, fairly obtained of a demand concerning the validity of which there is a *bona fide* dispute, citing among other cases Ostrander v. Scott, 161 Ill. 339-345, where it is said: "The authorities are numerous and uniform that a payment of a part of a fixed and certain demand which is due and not in dispute is no satisfaction of the whole debt, even where the creditor agrees to receive a part for the whole and gives a receipt for the whole demand. This doctrine rests upon the ground that the agreement for a discharge of the entire debt is without consideration." See also Davidson v. Burke, 143 Ill. 139; Fire Ins. Assn. v. Wickham, 141 U. S. 564. In the last mentioned case it is said that "if there be a *bona fide* dispute as to the amount due, such dispute may be

the subject of a compromise and payment of a certain sum as a satisfaction of the entire claim, but where the larger sum is admitted to be due or the circumstances of the case show that there was no good reason to doubt that it was due, the release of the whole upon payment of part will not be considered as a compromise, but will be treated as without consideration and void." There was evidence offered in appellant's behalf in the case at bar which the court refused to admit, but which would have tended to prove that the statements made to her by appellee's agent and which induced her to accept the payment of $2,500 and to receipt for it "in full release of all claims under" the policy, were false and that the acceptance by appellant of a part for the whole in this case was in no sense a compromise of a dispute raised in good faith.

·It is urged, however, in behalf of appellee that such evidence was properly excluded, because it is said the question whether or not appellant was in fact entitled to recover upon the policy sued upon does not arise on this appeal inasmuch as the receipt and alleged release signed by her shows that appellant settled, compromised and fully released any claim she may have had, by an instrument under seal. As to the plaintiff's claim to recover the $409.68 paid to appellee's agent as premium it is claimed that as the money was paid for the insured in his lifetime, a suit to recover it can only be brought by his personal representatives, also that if it was paid on account of the policy and if any right to recover it might otherwise exist, such claim was settled by the payment of the $2,500 and included in the release.

The ground upon which the trial court based its rulings and directed a verdict for the defendant appears to have been that the release in question is a release under seal. It is said in behalf of appellee that this question does not arise technically as the pleadings stand, but it is nevertheless the substantial question upon which both parties rest their con-

tentions as to the propriety of the rulings objected to and of the judgment appealed from. Appellant's attorneys contend that the alleged release is not a sealed instrument, that it contains neither a common law nor a statutory seal and has no other effect than as a receipt for $2,500 on account of the $10,000 policy, leaving due appellant a balance of $7,500 with interest. Appellant testified that the printed word "seal" was on the instrument when she signed it, but that the scroll or ink mark around the word "seal" was not there and that she never saw that scroll made in ink until it was shown to her in the court room at the trial. Appellee's agent with whom she made the alleged settlement testifies on the other hand that he himself put the scroll around the word "seal" at the time the instrument is dated and before it was signed when he filled out the body of the release, made the draft and cancelled the revenue stamp. There is direct conflict in the evidence therefore as to the ink scroll around the word "seal," but it is conceded the printed word itself was there when appellant signed the instrument, and it is insisted that its presence there at the time when appellant placed her signature before it constitutes the instrument a release under seal.

Counsel for appellant have presented an elaborate argument in support of their contention that the alleged "seal" is not such at common law nor under the statute of this State. That it is not a common law seal, viz., an impression upon wax or wafer or some other tenacious substance capable of receiving an impression, is not questioned. But the statute provides (R. S. chap. 29, sec. 1) "that any instrument of writing to which the maker shall affix a scrawl by way of seal shall be of the same effect and obligation to all intents as if the same were sealed." Appellant's counsel urge that the printed word "seal" is not a scrawl, that it was not affixed by the maker of the instrument and that it does not appear to have been intended "by way of seal" in the absence of evidence

to the contrary in the instrument itself and in the record. While it is true that the statute above quoted is substantially like that of Virginia, and that the presumption is that a statute of another state when adopted is adopted with the construction given it by the courts of that state (Martin v. Judd, 81 Ill. 492), there is nevertheless a distinction between adopting the construction of the language of an act defining a sealed instrument and determining what force and effect shall be given to an instrument so sealed, whether accompanied or not by expressions in the instrument itself declaring it to be a sealed instrument. It has apparently been held in Virginia that if in addition to the seal itself or scroll annexed as a seal it is not "expressed to be sealed" it may be "a matter of doubt" whether scrolls alone "are to be considered as the seals of the parties." (Baird v. Blaigrove, 1 Wash. (Va.) 170-171, and there are other cases to the same effect in that and other States.) In Lorah v. Nissley, 156 Pa. St. 329, on the other hand, the word "seal" was printed but there was no scroll and the body of the instrument contained no expression to the effect that the instrument had been given under seal. It was held to be a sealed instrument. In this State also in cases where the instrument contained no statement to the effect that it was given under seal, but the signature was followed by a scrawl or something purporting to be a seal, the instrument has been held to be a sealed instrument. In Ankeny v. McMahon, 3 Scam. (4th Ill.) 12-13, it is stated that "the paper in question is described in the body of it as sealed with the seals of the parties, and the letters 'L. S.' are in print opposite the names" of the signers. The court said that the "statute gives equal solemnity to instruments to which the signers affix their scrawls as to those to which they affix their seals by impression on wax or other tenacious substance. But it is urged that to give them the dignity of sealed instruments the scrawls should be actually affixed by the signers. We do not

perceive any good reason for this distinction. The printing of the scrawl or the characters representing a seal is as legible and durable as if made with a pen by the party, the only other usual mode of affixing a scrawl by way of seal; and it equally indicates the intention of the signer as to the character of the instrument. We can see no substantial difference as to the validity or dignity of the instrument whether the party executing it writes his name opposite a scrawl previously printed or written or actually affixes a scrawl after signing his name. If he places his signature opposite a scrawl already made, he thereby adopts it and makes it his own." (Citing cases.) In Davis v. Burton, 3 Scam. 41-44, it was held that it will be presumed all signers of an instrument indicating on its face an intention to sign it "adopted any seal or scrawl that may be annexed to the name of one." In Eames v. Preston, 20 Ill. 389, the instrument in controversy was a promissory note upon which after the signature of the maker appeared a pair of brackets "[ ]" without other indication of an intention to make it a sealed instrument. The court held, "this is certainly a sealed instrument." In Quincy Horse Ry. & C. Co. v. Omer, 109 Ill. App. 238, the instrument is a release with the word "seal" in brackets after the signature, but with no reference to a seal in the body of the instrument. It was held a valid and binding instrument. In Chamberlain v. Fernbach, 118 Ill. App. 145-149, it is said: "The objection of appellant's counsel that there is no recital in the body of the instrument that it is a sealed instrument cannot be sustained"; and further that "even though it were necessary to prove consideration, the objection cannot prevail because the instrument of assignment is under seal and this imports a valuable consideration." In Ryan v. Cooke, 172 Ill. 302-308, the instrument purported upon its face to be given under the hands and seals of the signers, but there were not as many seals as names of signers. It was considered as an instru-

ment sealed by all, the presumption being that each adopted some one of the seals attached. It appears therefore that a printed ''scrawl or character representing a seal'' is to be regarded as equally indicating an intention to make a sealed instrument as when affixed by use of pen and ink by the signer, that if a party attaches a signature ''opposite a scrawl already made he thereby adopts it and makes it his own''; that a mere bracket following a signature without other indication of intention expressed in the instrument entitles it to be regarded as a sealed instrument; and that it is not necessary in order to constitute a sealed instrument that it should be so recited in the body of the instrument. We are of opinion therefore that when appellant placed her signature opposite the printed word ''seal'' at the place where the seal usually appears on such instruments, she indicated an intention to make the release in question a sealed instrument. When she saw the word ''seal'' there she knew or should have knqwn it was intended to represent what it purported to be, and to so hold is in conformity not only with the authorities referred to but is to give effect to the intention of appellant as expressed by her act in placing her signature there.

Appellant's contention that a release of this character under seal has no greater effect than if it were not under seal where the actual consideration is expressed in the release, we cannot concur in. In Quincy Horse Ry. & C. Co. v. Omer, *supra,* the court quotes from and applies Papke v. Hammond, 192 Ill. 631-637-8, where it is said: ''It seems to be well settled that when the signature to an instrument under seal is procured by false representations, the nature of the instrument being fully understood by the party signing it, the effect of such instrument can only be avoided by a separate proceeding in equity.'' The court quotes also from George v. Tate, 102 U. S. 564, where it is said that ''in an action at law a written release of the character of that here introduced in evidence can-

not be impeached for fraud not inhering in the execution thereof, but which only goes to the extent of the consideration," citing Robinson v. Sharp, 201 Ill. 86. There is in the case at bar no complaint of fraud as to the execution of the release, no contention that appellant was misled as to the character or contents of the instrument, no charge that it was incorrectly read to her or that she signed a paper she did not intend to execute. See Gourley v. West Chi. St. Ry. Co., 96 Ill. App. 68-73; Hartley v. C. & A. R. R. Co., 116 Ill. App. 277-281; also Gray v. Bloomington & Normal Ry., 120 Ill. App. 159-186, as to contract under seal.

We find no error in the refusal of the Circuit Court under the evidence to submit to the jury the question as to the right of appellant to recover from the company the amount paid by her to Rennie during the lifetime of the insured, which Rennie claims was paid to him personally in settlement of a private debt due him from the insured. While there are other questions discussed in the briefs, what has been said sufficiently disposes of the material issues.

For the reasons indicated we are of opinion the release in controversy is a binding instrument under seal, constituting a bar to appellant's claim in this suit, and that the Circuit Court did not err in directing a verdict and entering judgment in favor of appellee. The judgment will therefore be affirmed.

*Affirmed.*