ANN VREELAND, Administratrix, v. CHICAGO, MIL-
WAUKEE & ST. PAUL RAILWAY COMPANY,
Appellant.

92  279
116  493

Negligence. An employee who knows when a train is to pass, walks ahead of it and disregards a warning to get off because he thinks he is on the track of another parallel road, is negligent.

SAME: FIREMAN. There is no obligation to stop a train till it becomes reasonably apparent that a man on the track will not get off, and is in danger.

SAME. Deceased is first seen sixty feet in front of a train with a grain door on his back, train is going without steam, headlight burning and bell ringing, at three miles an hour. When it got within twenty-five feet of him fireman informed engineer. Latter was then unable to stop his train. *Held*, fireman was not negligent.

*Appeal from Scott District Court.*—HON. C. M. WATER-
MAN, Judge.

SATURDAY, OCTOBER 20, 1894.

PLAINTIFF states, as her cause of action, that deceased, while in the employ of the defendant, and while walking on one of its tracks, was, without fault or negligence on his part, run upon by one of defendant's engines, and so injured that he died; that said engine was negligently run upon deceased, "without giving any warning, and while the train was moving at a slow rate of speed, so that the same could have been stopped before the engine struck and killed said deceased." The defendant answered, denying that deceased was without fault or negligence, and denying that it was negligent as charged. At the conclusion of the evidence, the defendant moved for a verdict, which motion was overruled. A verdict was returned in favor of the plaintiff for two thousand, five hundred dollars, and, defendant's motion for a new trial being overruled, judgment was entered upon the verdict, from which judgment the defendant appeals.—*Reversed.*

*Davison & Lane* and *Burton Hanson* for appellant.

*Ambrose P. McGuirk* for appellee.

GIVEN, J.—I.   Appellant's only claim in argument is that the court erred in overruling the motion for a verdict, and in not setting aside the verdict and granting a· new trial, on the grounds that the verdict was contrary to the law and evidence.   As all the questions presented in the motion for a verdict are involved in. the motion for a new trial on the grounds stated above, we need only inquire whether the court erred in not granting a new trial on those grounds.   No complaint is made in argument of the instructions, and, therefore, they must be taken as the law of the case, and the question is whether the verdict is in harmony with the law as therein stated, and with the evidence.   The evidence shows without conflict the following facts:   At Delmar Junction, where this accident occurred, the defendant's Chicago and Council Bluffs tracks run substantially in an east and west direction.   The defendant's Maquoketa and Davenport branch runs in nearly a northwest to southeast direction.   Defendant has a Y in the angle of the crossing, connecting these two tracks.   The depot building is situated in the southeast angle of the crossing.   A track of the Chicago & Northwestern Railway Company approaches said branch track on the north side thereof, south of the depot, and runs parallel therewith to near the depot, crosses said branch track to the south side thereof, and thence northwest, parallel with said branch, for some distance, across said Chicago and Council Bluffs track.   At, and for a long time previous to, this accident, an accommodation train of the defendant's, carrying freight and passengers, arriving daily from the northwest, bound for Davenport, stood upon the Y for about two hours before starting southward.   When time to start, it was

backed out upon said branch track, and then moved southeast, to the depot building, where it·stopped to receive passengers, its time for starting being 8 P. M. On the occasion of this accident, this train, consisting of an engine, some freight cars, caboose, and a passenger car, was moved in the usual manner.   The train was moving on a slightly down grade, without steam, at about three miles per hour, with a headlight burning and bell sounding, and with the intention of stopping the rear of the train at the depot building.   The deceased was in the employ of the defendant as wiper of an engine used in construction work, that remained at Delmar Junction on a side track over night, at a point about two hundred feet southwest of the depot building, and west of the Chicago & Northwestern track and of defendant's branch track.   On the evening of June 27, 1891, as said train was approaching the depot in the manner already stated, deceased, with a grain door on his back, such as is put on the inside of the door of freight cars to keep the grain from running out, was walking southward on the Chicago & Northwestern track.   He was seen by the fireman of defendant's engine, when fifty or sixty feet ahead of the engine, to step off the Northwestern track onto the defendant's track, ahead of the engine, where he continued to walk until struck by the engine and run over by the right-hand or west wheels of the engine.   The evidence shows beyond question that the deceased was guilty of negligence.   Having been employed at that station for some time, he was familiar with the tracks, and knew the time for the passing of that train.   He stated immediately after the accident that he knew the train was coming, that he heard the fireman call, but thought he was on the Northwestern track.   "Thought I was all right.   Didn't pay any attention."   The court submitted to the jury this single question:   "Were the servants of defendant in charge

of said engine negligent in that they did not avoid
injury to said Vreeland after his presence upon the
track was discovered?" The court also instructed the
jury "that there is no evidence that Vreeland's presence
upon defendant's track was known, prior to the acci-
dent, to anyone except the fireman on the engine which
struck him." Plaintiff contends in argument that the
engineer must also have seen him. The engineer testi-
fies positively that although in his place, on the right-
hand side of the engine, and looking ahead, he did not
see Vreeland, or know that he was on the track, before
the accident, and he is confirmed in this by the posi-
tion of himself and Vreeland at the time. This instruc-
tion of the court is in accord with the evidence, and
reduces the inquiry to whether the fireman was guilty
of negligence.

II.    The court instructed to the effect that the
fireman had a right to presume that the deceased would
leave the track, and that he was not required to take
steps to stop the train until it was reasonably apparent
to him, from the acts and conduct of deceased, that
deceased was not aware of his danger, or paying any
attention to the approach of the train; that, when the
fireman saw Vreeland on the track, he was not called
upon to speak to the engineer, or warn him of his
presence, nor to take any steps to check or stop the
train, until it became reasonably apparent to him that
Vreeland was ignorant of or inattentive to the approach
of the train, and in danger from the train; that, as
soon as it became reasonably apparent that Vreeland
was in danger of injury, it was the duty of the fireman
to warn the engineer of the fact, and the duty of the
engineer to use all reasonable efforts to stop the train,
and avert injury. The jury was instructed as follows:
"In this case the evidence shows that the warning
addressed by the fireman to the engineer was not
heard by the latter, but that he did hear the words

addressed by the fireman to Vreeland, and that, surmising danger to some person upon the track therefrom, he at once made all proper, reasonable efforts to stop said train. This will be sufficient to exonerate the defendant from all liabilities, provided you find that the fireman's warning to Vreeland was given in time; that is, if it was given as soon as it became reasonably apparent to the fireman that Vreeland was not going to leave the track, but was in danger of being struck by the engine. If you find that the fireman failed to give timely warning, as I have defined it, to the engineer, then you must find defendant negligent. To ascertain when it was that the fireman first knew, or reasonably should have known, that deceased was in danger, you may and should consider the employment of deceased, the place where the accident occurred, the time and manner of the usual operation of trains there, the extent of deceased's knowledge of how said trains were operated, the question of whether the fireman knew or believed it was deceased whom he saw upon the track, the rate of speed at which the train which struck said Vreeland was running at the time, and the apparent conduct and manner of deceased from the time the fireman first saw him walking upon the track of the Northwestern railroad.''

The engineer and fireman were the only witnesses to what occurred at and immediately before the accident, and the fireman is the only witness as to when deceased was seen, and as to what he did. They being the only witnesses of the occurrence, the plaintiff necessarily relies upon their testimony. The fireman's testimony shows that he saw and recognized deceased going south on the northwest track, with the door on his back; that he saw him step over onto the track on which the train was moving; that he did not then give any warning, except to continue to ring the bell, for the reason, he says,

"I expected to see him get off the track every minute."
There is some discrepancy in his statements as to the
distance deceased was from the engine when he stepped
onto the track in front of it, but this is not material,
as it is clear that at that time the fireman was under no
obligation to take steps to stop the train.

He testifies that when the engine was within about
twenty to twenty-five feet of Vreeland, he remarked to
the engineer, "We are getting close to him," and says:
"Then I hollered, 'Hey, look out there!' and the engi-
neer reversed the engine." When this warning was
given, Vreeland passed diagonally to the right side of
the track, out of sight of the fireman. The engineer
testifies that the fireman said something which he did
not understand; that, when the firemen called, "Get
out of there, or get off there, or something like that,"
he thought there was danger, and reversed the engine;
that he did all he could to stop the train; that the
engine may have run twenty or thirty feet after he
reversed; and that he could not have stopped in ten
feet. He states that, after the accident, Mr. Vreeland
was lying on the righthand side of the train nearly
opposite the gangway of the engine; that the train
was about three hundred feet long, and the engine,
including the tender, about thirty-eight feet. These
two witnesses and Herbert L. Steen, the station agent,
were the only witnesses to what occurred immediately
after the accident. They testify that Mr.
Vreeland said that he knew the train was com-
ing; that he heard the bell; heard the fireman
call, but supposed he was on the Northwestern track,
and supposed he was all right. In view of the slow
speed of the train, it was manifest that, if Vreeland
was warned when the train was within twenty or
twenty-five feet of him, he had plenty of time to get
out of the way. That the fireman did give him warn-
ing is unquestioned; but did he give it in time? Did

he give it when the train was twenty or twenty-five feet away? The fireman gives this as his estimate of the distance, and we think his estimate is corroborated by other facts. The train was about three hundred feet long; the engine and tender thirty-eight and the engine proper about twenty. The accident occurred about one hundred and fifty feet south of the south end of the depot, and therefore the train had one hundred feet or more to run before bringing the rear car to the depot, as was intended. These facts are against the claim of plaintiff that the fireman did not give timely alarm, thinking that the train would make its regular stop before it overtook deceased. The fireman testifies that he had been watching for signals from the rear, and must have known about the position of the train, and that it would go more than twenty or twenty-five feet before the regular stop. The engine passed its entire length—twenty feet—over the deceased after it struck him, so that it must have run about forty feet after the alarm was given. The engineer says it was a bad night, and that the engine may have run at least twenty or twenty-five feet after he reversed her. Allowing for the distance that would be traveled during the time necessarily employed in reversing the engine after the alarm was given, we think these facts strongly corroborate the fireman in his estimate of the distance Vreeland was in advance of the engine when the alarm was given. The alarm being given in time, and the engineer immediately acting upon that alarm, by doing all that could be done to avert the accident, nothing remained for the fireman to do. We discover nothing whatever in the evidence to support the conclusion that the fireman failed to give timely warning. The whole occurrence is explained in the statement of the deceased, as testified to by the three witnesses, that he thought he was on the Northwestern track. Counsel for plaintiff insists

that the fireman was negligent in not notifying the engineer of the presence of Vreeland on the track before he gave the alarm. The court instructed correctly, we think, that the fireman was not called upon to warn the engineer of Vreeland's presence on the track until it became reasonably apparent to him that Vreeland was in danger. This the fireman did, and in finding otherwise we think the jury found contrary to the law as given them by the court, and to the evidence. REVERSED.