CHARLES HARTMAN, Appellant, v. THE CHICAGO GREAT WESTERN RAILWAY COMPANY, Appellee.

**Direction of verdict:** CONSIDERATION OF EVIDENCE. In determining
1 a motion to direct a verdict at the close of plaintiff's case the court will regard as established every fact which the evidence fairly tends to prove.

**Railways:** CROSSING ACCIDENT: REASONABLE CARE. Except in cases
2 which are free from doubt the question of the exercise of reasonable care on the part of one approaching a railway crossing is for the jury.

**Same:** NEGLIGENCE OF COMPANY. A railway company is charged
3 with the common law duty of taking notice of the location and surroundings of a private crossing and if reasonable regard for the safety of those rightfully using the crossing requires it, a proper signal of an approaching train must be given; and where the railway company itself has diverted the public travel from the highway to a private crossing in the same vicinity the statutory requirement that an approaching train shall sound the whistle applies.

**Same:** RATE OF SPEED. Mere rate of speed in the open country is
4 not in itself negligence as to one upon a crossing, but it may become material when considered in connection with the surroundings of a particular crossing, in determining the question of due care on part of the company and this question is one of fact.

*Appeal from Chickasaw District Court.*— HON. L. E. FELLOWS, Judge.

SATURDAY, DECEMBER 15, 1906.

ACTION at law to recover damages for injury to plaintiff's team and other property upon a railway crossing. There was a directed verdict in favor of the defendant, and plaintiff appeals.— *Reversed.*

*Springer, Clary & Condon,* for appellant.

*Smith & O'Connor,* for appellee.

WEAVER, J.— The testimony on part of plaintiff tended to show that at a point near the plaintiff's residence a public road intersected the defendant's right of way, but by reason of the excavation for the railway travel on the highway at this point was interrupted. To accommodate the travel until an appropriate highway crossing should be constructed, persons using that route were permitted to depart therefrom, and drive along the right of way to the north to a point in the neighboring field where a crossing over the track had been provided, and by that route reach the other side of the railway. Whether this crossing was a temporary expedient, adopted by the defendant for use while the regular public crossing was impassable, or was constructed as a private crossing for the benefit of the adjacent landowners, is not quite clear in the record. It appears, also, that from the point where travel was diverted from the public road to the crossing in the field the railway passes through a deep cut, and a person driving a team along the path at the top of the cut cannot see trains approaching from the south, but by going to the brink of the cut a view of the track for a considerable distance may be obtained. The evidence of the witnesses is also to the clear effect that for a long time it had been the custom and practice of the defendant's enginemen to sound the whistle on approaching this crossing from the south.

On the day in question plaintiff's servant, a man thirty-five years old, and of considerable experience in handling horses, was driving a team attached to a wagon loaded with three cans of milk in the direction of a creamery located on the opposite side of the railway. Turning in upon the right of way on the east side of the track he drove along the route to the north which we have just described. He testified that,

just before reaching that portion of the route where the track was hidden from view, he looked back, and there was no train in sight. Again, before reaching the crossing in the field, he stopped his team to hitch up a tug that had become unhooked, and at this time looked and listened as well as his situation would permit, but neither heard nor saw the approach of a train. He also claims that from this point until he reached the point of the collision he continued, to the best of his ability, to look and listen for trains from both directions, and that as he swung his team, which "was prancing and dancing along," in upon the crossing, a train came through the cut from the south at a high rate of speed, striking and killing the horses, and ruining the harness and wagon. Several witnesses concur in the statement that the engine which collided with the team did not sound the whistle for the crossing that morning.

We are impressed with the belief that the case thus made was one for the consideration of the jury, and that there was error in directing a verdict. The defendant of-

1. DIRECTION OF VERDICT: consideration of evidence.

fered no testimony, and for the purposes of the motion plaintiff was entitled to have taken as established every fact which his evidence fairly tended to prove. Assuming that the driver of the team told the truth (and his credibility was for the jury alone), we cannot say, as a matter of law, that he was himself guilty of negligence contributing to his injury.

The rule of " stop, look, and listen " is not of invariable application. It is easy to say and it is a correct proposition that a person approaching a railway crossing must bear in

2. RAILWAYS: crossing accident; reasonable care.

mind that it is a place of danger, and be vigilant to discover the approach of trains, and use reasonable care to avoid injury therefrom; but whether such reasonable care requires him to stop, look, and listen, or whether, having done so, he must stop, look, and listen again, whether he may place any reli-

ance on the absence of danger signals, or upon any other given fact or circumstance, depend so much upon the peculiar conditions by which he is surrounded, that, save in cases exceptionally free from doubt, the question must be left to the answer of the jury. *Selensky v. Railroad,* 120 Iowa, 113; *Funston v. Railroad,* 61 Iowa, 460; *Winey v. Railroad,* 92 Iowa, 622; *Harper v. Bernard,* 99 Iowa, 159; *Moore v. Railroad,* 102 Iowa, 595; *Mackerall v. Railroad,* 111 Iowa, 547, 82 N. W. 975; *De Frieze v. Railroad,* not officially published (Iowa), 94 N. W. 505; *Kuehl v. Railroad,* 126 Iowa, 641; *Atchison R. R. v. Hague,* 54 Kan. 284, (38 Pac. 257, 45 Am. St. Rep. 278); *Chaffee v. Railroad,* 104 Mass. 116; *Ernst v. Railroad,* 35 N. Y. 9, (90 Am. Dec. 761); *Newson v. Railroad,* 29 N. Y. 390; *Brown v. Railroad,* 32 N. Y. 597, ((88 Am. Dec. 353); *McGrath v. Railroad,* 32 Barb. (N. Y.) 147; *Warren v. Railroad,* 8 Allen (Mass.), 227, (85 Am. Dec. 700); *Fero v. Railroad,* 22 N. Y. 213, (78 Am. Dec. 178); *Keller v. Railroad,* 24 How. Pr. (N. Y.) 177; *Klanowski v. Trunk,* 57 Mich. 525 (24 N. W. 802); *Railroad Co. v. Wright,* 80 Ind. 182; *Davis v. Railroad,* 47 N. Y. 400; *Strong v. Railroad,* 61 Cal. 326; *R. R. v. Lee,* 87 Ill. 454.

But it is claimed in the case at bar that in any event there was no evidence of negligence on part of defendant, and therefore a verdict in plaintiff's favor could not be upheld. Such is not our conclusion from the **3. SAME:** **negligence of** **company.** record presented. It is true that the crossing upon which the accident occurred was not upon a public highway, and, therefore, if it is to be considered merely as a private crossing, no statutory duty rested upon the defendant to sound the whistle in approaching it. *Nichols v. Railroad Co.,* 125 Iowa, 236. Nevertheless, the defendant was charged with the common-law duty to take notice of the location and surrounding of its private crossings, and if, in view of such circumstances, reasonable regard for the safety of persons rightfully

using such crossing required the sounding of the whistle or the ringing of the bell or the use of other proper precaution or warning, then the failure so to do would be negligence. Moreover, where the railway company obstructs and prevents the use of the highway crossing, and thereby knowingly diverts the travel to a private crossing in the same vicinity, we think that, so long as this condition prevails, the latter crossing is to be so far treated as public as to require the use of statutory signals by approaching trains. There is also, as we have before noted, evidence that the defendant company had in fact been in the habit of observing this precaution, and the failure so to do on the morning of the accident, if established, tended materially to sustain the plaintiff's charge of negligence.

The plaintiff also alleges negligence in the speed of the train at the time of the collision. As has often been said, no rate of speed in a train moving in the open country is in itself negligence as to a person upon a cross-

4. SAME: rate of speed.

ing, but it sometimes happens, when considered with reference to the circumstances of the particular place, that the rate of speed may be an important factor in determining whether due care has been exercised. *Kinyon v. Railroad,* 118 Iowa, 349. Whether, in view of the location of this particular crossing at the end of a deep cut, the obstructions, if any, to the view of the approaching traveler, the failure to sound signals of warning, and other attendant circumstances, the rate of speed in this instance had any tendency to indicate a want of reasonable care on part of the defendant was a question of fact and not of law.

Some other questions have been argued by counsel, but in so far as they fairly arise on the record before us they are governed by the conclusions already announced.

For the reasons stated, a new trial must be ordered, and the judgment of the district court is therefore *reversed.*