ANNA WILLIAMS, Appellee, v. MASON CITY & FORT DODGE RAILWAY COMPANY et al., Appellants.

448

JULY 1, 1927.

REHEARING DENIED FEBRUARY 17, 1928.

*Carr, Cox, Evans & Riley* and *Stevenson & Stevenson*, for appellants.

*E. A. & W. H. Morling* and *Jacobs & McCaulley*, for appellee.

KINDIG, J.—Errors assigned relate to appellee's contributory negligence, the admission of evidence, and the court's wrongful submission of the issues to the jury. Attention now will be directed accordingly:

I. At the outset it is contended that the proximate cause of appellee's injury and resulting damages was her own contributory negligence. Appellants' argument is that such carelessness appears in the record as a matter of law.

The place of the accident was at a point where the railway tracks cross Eighteenth Street, a paved thoroughfare in Fort Dodge, and the time was between 11 and 12 o'clock in the fore-noon of December 22, 1923. Said highway runs north and south, and three sets of railroad tracks cross it at right angles. Approaching this intersection, appellee (who was then 64 years of age),

was riding north on said pavement in the front seat of her husband's six-cylinder Oldsmobile, five-passenger, touring car. Her husband (who was at that time 71 years old) was driving, and she was at his right, or on the east side of the vehicle, the direction from which the train was backing into the depot westward toward said crossing, on the north tracks. Said train consisted of an engine, two baggage cars, and four coaches. Its entire length was 420 feet. A civil engineer testified for appellant that 51 feet south of the point of collision appellee had a clear, unobstructed, and continuous view for practically a block to the east, including part of the territory through which the train was backing. This line of vision was extended southwest to northeast directly north and west of certain obstructions east of Eighteenth Street and south of said track.

With this as a basis, it is seriously contended that the physical-fact rule must be applied, and that, under said theory, appellee did not raise an issue of her freedom from contributory negligence by the statement that she looked, but did not see the train until it was so close the accident could not be avoided. In other words, it is said that such statement, considered with certain undisputed facts, constitutes no conflict. Said rule has been constantly applied in this state. *Artz v. Chicago, R. I. & P. R. Co.*, 34 Iowa 153; *Anderson v. Dickinson*, 187 Iowa 572. Appellee had a duty to perform. She was required to use due care, and, if that burden was not met, recovery is barred because of contributory negligence. *Anderson v. Dickinson*, supra; *Brown v. McAdoo*, 195 Iowa 287; *Sackett v. Chicago Great Western R. Co.*, 187 Iowa 994; *Beemer v. Chicago, R. I. & P. R. Co.*, 181 Iowa 642.

Can it be said that, under the record in this case, said general principles do defeat recovery? We think not. Appellee's approach to the scene of the accident was by a coal shed located just south of said railroad tracks and 35 or 40 feet east of the east curb of said street. On a spur track north of said shed was a coal car, and at the end of said spur track was a bumper. The engineer in his measurements did not take into consideration a truck north of said coal car, the distance between it and said coal car, the width of the truck, nor the location. All logically enter into this equation. Appellee said she could not see eastward until she passed these obstacles. In fact, the obstruc-

tion continued until her arrival upon the south or switch tracks. It was approximately 32 feet from the south rail of the Great Western tracks to the south rail of said switch tracks, but there is nothing in the record to show where the north end of appellee's auto was when she was in a position to see. At the time she was on said switch tracks, the front end of the automobile would naturally protrude several feet farther. Was this six, eight, ten feet or some other distance? In any event, the distance of 32 feet was considerably diminished. No doubt there was some overhang of the railway coach, which again minimized the distance. This magnifies the doubt. The husband testified he could stop his automobile in eight or ten feet, because it was moving slowly. Considering this, with the subtractions just suggested, there were not many feet left within which appellee could make observations. The train was backing, and therefore would not be so readily observed as one going forward. There was another automobile running near the back end of and parallel with the train, and that might have caused brief confusion. Poles were on the east side of Eighteenth Street, which possibly may have, for the moment, distracted attention. It was dry and dusty. These are all facts and circumstances that influence final determination of the fact question involved. Appellee was constantly looking so that she might discover any approaching train and inform the driver of the danger. That was her duty. Had she been driving, closer calculations could be made; for, upon sight of the train, her feet instantly would press the clutch and the brake; but she was not the chauffeur. After she discovered the danger, it was, therefore, necessary to impart that information to her husband, and he, in turn, required some time in which to execute her command and stop the machine. Appellee actually discovered said train and informed her husband of its coming, but it was too late. Earnest argument by appellants is based on the fact that the automobile stopped after the tracks were reached, and that this afforded appellee an opportunity to look, see, and observe. There is dispute, however, as to this location. Under the record, the jury could well have found that said place was several feet south of the tracks, where observation was blocked by the buildings. In view of these many uncertainties, it cannot be said, as a matter of law, that appellee was guilty of

contributory negligence. *Willis v. Schertz*, 188 Iowa 712; *Glanville v. Chicago, R. I. & P. R. Co.*, 190 Iowa 174; *Bradley v. Interurban R. Co.*, 191 Iowa 1351.

The jury, and not the court, could determine appellee's negligence, or freedom from negligence, in the emergency.

II. Error is ascribed because the witness Higgins was permitted to testify as an expert concerning the distance within which a passenger train with six coaches could be stopped. This assignment was founded upon the incompetency both of the witness and the testimony. Said expert was a farmer at the time of the trial, but until 1922 had been engaged continuously for many years in railway train service for the Chicago & Northwestern and other companies, first as brakeman and then as conductor. The latter experience was largely with freight trains, but included some trips on passenger trains; while the brakeman service was on a passenger train. He was acquainted with air and the ordinary equipment brakes for passenger trains, and had operated the same "by a conductor's valve on the angle cocks or tail hose." Constant observation enabled him to know the time required in starting and stopping under varying conditions. Necessary qualifications to testify appeared. *Schroeder v. Chicago & N. W. R. Co.*, 128 Iowa 365; *Kerns v. Chicago, M. & St. P. R. Co.*, 94 Iowa 121; *Grimmell v. Chicago & N. W. R. Co.*, 73 Iowa 93; *Withey v. Fowler Co.*, 164 Iowa 377.

Insistence is further made that the opinion of this witness is incompetent because he did not claim to be an expert, although he understood the use of the devices in question from the standpoint of brakeman or conductor. And further, it is objected that said witness did not know the particular make of brake on the train in question, nor did he know the amount of air pressure carried. He gave testimony concerning standard apparatus. There was in force and effect, at the time of the accident, statutory requirements for brakes and their operation. This furnished some basis for the meaning of "standard." It must be presumed appellant complied with the law in such regard. If the equipment was above standard, no prejudice could result from the opinion. Said witness made the statement that the ordinary train was so equipped and operated that the effect

of manipulating the air valve would be the same, regardless of the kind and make of brakes.

The evidence was competent, and its admission was without error.

III. Attack is made on the instructions because they presented the question of the railroad company's independent and distinct negligence in maintaining said coal shed and car at or near said crossing, and that such maintenance and storing were not sustained by the evidence. Such exception is not well taken. The district court, in the preamble of its directions to the jury, did state that plaintiff, in her petition, among other items of complaint, so alleges. But then continuing in Paragraph I thereafter, the court charges that body concerning specific acts of negligence named as a basis for recovery, and therein omits said objectionable ground first named.

It might have been well for the trial court to have left out the disputable matter from the preliminary statement of the claims. However, only a brief recitation of the pleaded substance was made. That court did not intend to, and carefully refrained from, presenting any question concerning the alleged separate ground of negligence complained of, and limited the consideration of the jury to the sole question of determining whether or not appellants were guilty of negligence under said limited allegations of the complaint named in the issues. Considering the facts and circumstances here presented, this was not prejudicial error. *Bruggeman v. Illinois Cent. R. Co.*, 154 Iowa 596.

IV. The district court permitted the jury to consider said facts under the doctrine of the last clear chance. Appellants argue this was improper because the record does not disclose that appellee was actually discovered in her peril by Glynn, the conductor, in time to have avoided the collision. Said employee was operating the train from the rear end by the use of the air appliances.

Legal principles involved are well established. In *Wilson v. Illinois Cent. R. Co.*, 150 Iowa 33, this court said:

"The doctrine of last fair chance presupposes negligence on the part of the party injured, and proceeds upon the theory that, notwithstanding this negligence, if the other party,

being cognizant of that negligence and of the peril in which the party had placed himself, failed to take the necessary precautions to avoid injuring him, he is liable, on the theory that he had a fair chance to avoid the catastrophe by the use of ordinary care, and his failure to exercise it is, in such cases, the proximate cause of the injury.''

Another legal requirement, however, must be met, before the quoted law is applicable. It is that those in charge of said train must have actually seen appellee in peril soon enough to avoid her injury by the exercise of ordinary care. *Barrett v. Chicago, M. & St. P. R. Co.*, 190 Iowa 509; *Waters v. Chicago, M. & St. P. R. Co.*, 189 Iowa 1097; *Carr v. Inter-Urban R. Co.*, 185 Iowa 872.

Appellee suggests that said trainman saw the approaching automobile 100 to 150 feet south of the crossing. The conductor so testifies. That, however, does not overcome the difficulty. Travelers in motor vehicles frequently and customarily drive toward an on-coming train and stop just before going upon the tracks, in order to permit the train to proceed on its way. There is in such conduct, however, no ''peril,'' until such wayfarer fails to stop in a zone of safety. Those in charge of the train have a right to assume that he will not drive into danger. *Albright v. Chicago, R. I. & P. R. Co.*, 200 Iowa 678; *Vreeland v. Chicago, M. & St. P. R. Co.*, 92 Iowa 279. The North Dakota court aptly said:

''Those engaged in the operation of railway trains are not bound to anticipate that drivers of automobiles and trucks upon the highways will be guilty of negligence in approaching crossings without taking reasonable measures to ascertain the approach of a train. If the rule were otherwise, the last clear chance doctrine would require the trainmen, at the peril of being held responsible for an accident, to slow down every time they should observe an on-coming motorist in a position where, if he did not see the train, he might negligently collide with it.''

See, also, *State ex rel. North Dakota Workmen's Compensation Board v. Great Northern R. Co.*, 54 N. D. 400 (209 N. W. 853).

A basic principle is thereby furnished for our consideration of this record. Said trainman on the rear of the buffet car had charge of train operations. By the use of the automatic regu-

lator, he could apply the brakes from his position, the same as the engineer could at the head end. No other employee saw appellee before the accident. The question then is, When did the said railroad company, through said rear operator, learn of the woman's peril? He said the automobile stopped on the interurban tracks approximately 12 feet south of the place of impact, and then, without warning, suddenly lurched forward in front of the train. That said motor vehicle discontinued its movement at said time, and afterward suddenly started forward, is denied by appellee and her witnesses. As to this there would be a jury question. But, however said fact may be determined in such regard, it appears without controversy therefrom that said train pilot first discovered appellee's peril at said time and place. The motor vehicle was traveling slowly, and the train was moving at the rate of approximately 10 miles an hour. It was said by the conductor that, when he first saw the danger, the rear of the train was then nearly the same distance east (about 12 feet), and he applied the air, which brought the train to a halt as quickly as possible. Said representative testified, as an expert, that, in his judgment, the train, after the emergency brake was applied, would travel about 25 or 35 feet before it could stop. Higgins testified for appellee that said stop could be made in not to exceed 20 feet. At this place, the testimony of appellants' witness Reed becomes important. He told the jury that, at the moment the automobile first jerked forward after its ceasing to move, as claimed, the train was about 30 feet away. Said conductor, according to his testimony, was at his post of duty, watching appellee's car, and at all times ready to apply the emergency machinery. It is, then, we think, a fair question for the jury to say what distance they find to be the correct one within which the train could have been stopped, as well as the location at the time the chauffeur started forward. The legal rule is that the train operator in charge must know the "peril" of appellee, in order to fix liability upon appellants under the doctrine of "last clear chance;" yet such knowledge and the time the same is acquired may be proven by circumstantial, as well as direct, evidence. Accordingly, this court has said:

" * * * if it appears from the evidence that he [the operator] had a clear, unobstructed view of the track, the jury

may infer, from his duty to keep a lookout ahead, that he in fact saw the injured person in a position of peril." *Carr v. Inter-Urban R. Co.*, supra.

There was justification in the record for the jury to find that said stop could have been made in 20 feet, and that said "peril" was discovered when the train was 30 feet off.

The district court was not in error regarding this submission.

V. Issue is taken with the action of the district court in submitting to the jury the charge of negligence based upon the lack of watchman, flagman, automatic or other signaling device. It is said there is no evidence to support this instruction. This court has held:

" * * * that a railway company is required to station a flagman or install electric or other signaling devices only when, owing to its situation, surroundings, or use, the crossing is more than ordinarily dangerous,—so dangerous and of a character such that other than statutory warnings are essential to the reasonable protection of travelers on the highway about to cross the railroad tracks." *Glanville v. Chicago, R. I. & P. R. Co.*, supra.

At this crossing there was no watchman, and no automatic signal of any kind. There is evidence that Fort Dodge is a city of 35,000 inhabitants. The street in question is paved for public service, and surrounded by business institutions. Buildings obscure the crossing. Many switch engines, interurban and other trains pass to and fro. One witness testified to the confusion of sounds. A marked curve is in the tracks two blocks to the east. Traffic on Eighteenth Street is heavy from 10 o'clock on during the day. To avoid repetition, we refer to the fact statements previously made.

The district court properly permitted the jury to determine the issue.

VI. Appellant declares, as a legal proposition, that contributory negligence may consist of either acts of omission or commission, and the giving of an instruction in the case at bar defining contributory negligence as including only acts of omission was prejudicial error.

Failure to include in said charge the thought that negli-

456

gence also consists of an affirmative was unfortunate. Appellants call attention to the fact that the driver of the auto-mobile, after looking upon his side for danger, asked the appellee, who was looking in her direction, "How is it with you?" and she replied, "Nothing here." He then went ahead. The assertion is made that this was an act of commission, rather than omission, and therefore was not covered by the above definition. Fundamentally, however, the fault of Mrs. Williams, if any, was in failure to look and listen.

In the light of the theory on which the case was tried, and considering the subsequent and other instructions wherein the duty of appellee in the premises was defined, the error was without prejudice.

VII. Other controversies are raised, but they are without merit, and not material to the decision of this case.

Because of the foregoing, the judgment of the district court should be, and hereby is,—*Affirmed.*

DE GRAFF, VERMILION, and ALBERT, JJ., concur.

STEVENS and FAVILLE, JJ., concur in the result.

EVANS, C. J., and MORLING, J., take no part.