J. A. GRAVES, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

December 14, 1928.

*J. G. Gamble, A. B. Howland,* and *J. A. Penick,* for appellant.

*G. C. Stuart* and *W. W. Bulman,* for appellee.

WAGNER, J.—At a private crossing, one of defendant's trains collided with plaintiff's threshing outfit, consisting of a tractor and a separator. The plaintiff is asking to recover the damages to his property, alleging that the same were caused by the negligence of the defendant, its agents and employees. The allegations in the petition, as to negligence, are as follows:

"(a) That the planks laid on each side of the rails on the crossing were not of sufficient strength, and would not, and did not, come up level with the top of the rails, but left a space of about three inches between the top of the plank and the top of the rail, and there were no planks between the rails; and plaintiff alleges that, if said crossing had been properly constructed and maintained, as provided by law, he could have safely passed over said crossing.

"(b) Plaintiff alleges that defendant was negligent in the operation of its said train, under the conditions that existed, at the rate of speed at which it was operated.

"(c) Plaintiff alleges that defendant was negligent for the reason that, after the tractor and threshing machine was stalled on the track, defendant's agents and employees were signaled that danger was ahead; and after they knew, or should have known, and could, with the exercise of ordinary care, have known that said tractor and threshing machine were stalled on said track, they failed to use any means whatever to slow down or stop the train, or prevent said accident, but, on the contrary, the engineer in charge of said train abandoned the engine and jumped from the train.

"(d) Plaintiff further alleges that one Crabel Mason was standing in the middle of the track, about 400 or 500 feet from where the tractor and threshing machine were stalled, signaling to the engineer in charge of the train, and that from this place the engineer could have seen, and plaintiff alleges that he did observe, the condition of danger ahead, but that he made no effort to prevent the collision which immediately followed.

"(e) Plaintiff further alleges that defendant was negligent for the reason that defendant's employees had knowledge of this private crossing, which has been used for years, and knew the condition of the same; knew that it was often used in moving heavy machinery across the track; and their failure to keep a lookout over said conditions constituted negligence."

The said petition also contains the allegation that the plaintiff was free from contributory negligence.

The defendant answered by general denial, and that plaintiff's negligence caused or contributed to the damage sustained.

Upon trial to the court and a jury, a verdict was returned in favor of the plaintiff, and a judgment rendered thereon against the defendant. From this judgment, the defendant has appealed.

The defendant assigns as error the action of the court in overruling the motion of the plaintiff for a directed verdict, made at the close of plaintiff's evidence, and renewed at the close of all of the evidence; the giving by the court of certain instructions; and the refusal of the court to give certain instructions asked by the defendant.

Just before the time of the collision, the plaintiff had finished a job of threshing, on the west side of the defendant's rail-

road, for Crabel Mason, a tenant on the Milne farm. A portion of said farm lay on each side of the railroad, and, in order to get to and from that portion of the land on the west side of the railroad, it was necessary to pass over the private crossing in question. At the crossing, the railroad track runs nearly north and south, and the ground slopes very abruptly from the east to the west. There is considerable rise from the track to the east right-of-way fence. The west right-of-way fence is approximately 10 feet lower than the track. The slope from the railroad to the west gate is not gradual, but is steeper next to the track. There is testimony that the track is from 5 to 7 feet higher than at a point from 10 to 14 feet west. On the track, on each side of each rail, there was a plank 2 or 3 inches thick, spiked through shims to the ties; between the two inner planks there was ballast, or cinders. There is testimony that the top of the rails was as much as 3 inches higher than the planks on either side, but other testimony that the rails were very little, if any, higher than the planks. The crossing is about 1½ miles from Purday, the first station to the south, and between 3 and 4 miles from Melcher, the first station to the north. The plaintiff, with his machinery, crossed this crossing from east to west on the forenoon of the day in question, to wit, August 12, 1926, on which day the sun set at 7:03 P. M. The collision occurred in the dusk of the evening, between 7:30 and 8 o'clock, the plaintiff's testimony not fixing the exact time; but the engineer in charge of defendant's train testified definitely that the accident occurred right at 7:50 P. M. The crossing is approximately at the north end of a curve. One can see down the track over 600 feet, and there is nothing in the record to show that, in so far as the view is concerned, it could be termed a dangerous crossing. Shortly before the plaintiff attempted to cross the track from the west to the east, a train had gone south. At the time of the accident, Mason and Ashby were with the plaintiff, rendering such assistance as they could. Mason had gone a considerable distance to the south, to look for an approaching train from that direction, and returned, reporting that he saw smoke from what he thought was an engine standing still at Purday, which he believed to be the engine that had shortly before passed southward. The plaintiff then made the attempt to cross the track with his outfit. The front wheels of the tractor passed over the west rail; but when the drive

wheels struck the plank, the traction tore it from its place, and when said wheels reached the rail, they began to spin on the top of the rail. The separator was blocked, to keep it from going to the west, and uncoupled from the tractor, and a chain was hitched to the separator and tractor. The plaintiff then replaced the plank, and, the chain being slack, the tractor passed over the west rail; but when the plank and east rail were reached by the drive wheels of the tractor, the slack in the chain having been taken up, the same difficulty occurred as at the west rail. At this juncture, the plaintiff and his crew saw the reflected rays of light from the headlight on the engine of the train coming around the curve from the south. Plaintiff testifies, in substance, that Mason went down the track to flag the train, and that he followed him; that he saw Mason waving his arms for the purpose of flagging the train; and that, in his judgment, Mason was at that time 400 or 500 feet from the crossing; that, when the engine was at least 100 feet south of Mason, two sharp whistles were sounded; that he was about half way between Mason and the crossing; that he first noticed any apparent slacking of the speed of the train as the engine passed by him. He was then asked, ''What called your attention to the fact that the train was being slowed down as it passed you?'' and he answered, ''The squeaking of the brakes.'' He gave it as his judgment that the train, as it passed him, was advancing at a speed of from 17 to 20 miles an hour. The train struck the outfit, and came to a full stop from 100 feet to 200 feet north of the crossing. As it approached the crossing, the train was coming downhill, the percentage of the grade being about one per cent.

The engineer testified, in substance, that the train, being a freight train, consisted of 35 cars, and that the tonnage of the train was 2,250 tons; that he observed a man giving a signal when he was about 150 feet from him; that it is his judgment that the party signaling was 300 to 350 feet from the crossing; that he immediately applied the brakes at emergency, and applied sand; that, after seeing the signal, he naturally looked farther ahead, and could see a dark outline of some object on the crossing, which he knew should not be there; that he could not tell at that time what it was; that there was nothing further that could have been done to stop the train; that the steam had

been cut off before he received the signal; that they were drifting down hill; that the train was stopped in as short a distance as it could have been stopped; that, when the engine was approximately 100 feet south of the crossing, he stepped off on the ground, and received four fractures of his right arm. There is other testimony in the record, but we deem the foregoing sufficient for the determination of the propositions presented.

The defendant, in its argument in support of the claim that the motion for directed verdict should have been sustained, does not contend that the plaintiff was guilty of contributory negligence, as a matter of law. Therefore, if there is evidence supporting any one of the alleged grounds of negligence, which the jury might find was the proximate cause of the collision, the action of the court in submitting the same to the jury must be sustained. The defendant contends that the evidence is insufficient to support Ground (a) of the negligence alleged in the petition. It was the duty of the defendant to construct and maintain a safe and adequate farm crossing or roadway across the railway and right of way. See Section 8011 of the Code of 1924. The defendant at this point relies on *Peterson v. Chicago, M. & St. P. R. Co.*, 185 Iowa 378; but that case is clearly distinguishable from the instant case. In the cited case, the negligence was predicated solely upon the fact that the top of the highway was just the thickness of a plank below the top of the plank. The crossing was fully planked, and there was only a slight grade in approaching the track. In the instant case, we have not only the condition complained of as to the elevation of the rail above the plank, and the failure to entirely plank between the rails, but we have the steep incline at the west of the track. It requires more than the planking at the rails to constitute a crossing or roadway, within the meaning of the statutory law. It was the duty of the defendant to construct and maintain a reasonably safe and adequate crossing; and in determining said proposition, the steep incline to the west is to be taken into consideration, as well as the other matters complained of. It is sufficient to say that we hold that the question as to whether or not the defendant had constructed and was maintaining a reasonably safe and adequate crossing was for the jury.

In stating the issues to the jury, in Instruction No. 1 the

court copied the allegations of negligence as they appeared in the petition, which allegations are hereinbefore set out. In a  subsequent instruction, he told the jury that, if they found from a preponderance of the evidence that any one or more of the allegations of. negligence as set out in the petition and quoted in Instruction No. 1 had been established, and that said negligence was the proximate cause of the collision, and that the plaintiff was free from negligence which in any manner or degree contributed to the collision, then their verdict should be for the plaintiff. In this manner, the court submitted to the jury all of the aforesaid allegations of negligence, including a failure to keep a lookout, as alleged in Ground (e), hereinbefore quoted. The evidence fails to establish the fact that those in charge of the train were not keeping a lookout, and if the  pleader intended by said allegations to allege the failure to keep a lookout or flagman at said crossing, the conditions were not such as to require the defendant to do so. See *Glanville v. Chicago, R. I. & P. R. Co.*, 190 Iowa 174. Thus it is manifest that it was error on the part of the court to submit said ground of negligence to the jury.

The court submitted Ground (b), hereinbefore set out, in the language therein stated. Therefore the court permitted the jury to find that the defendant was negligent in the operation  of the train "under the conditions that existed," at the rate of speed at which it was operated. We have many times held that speed in the open country is not an' independent ground of negligence, but that, at places of peculiar or extraordinary danger, it may become a material factor, in connection with other facts and circumstances, in determining whether due care has been exercised. *Gray v. Chicago, R. I. & P. R. Co.*, 143 Iowa 268; *Artz v. C., R. I. & P. R. Co.*, 44 Iowa 284; *Cohoon v. Chicago, B. & Q. R. Co.*, 90 Iowa 169; *McKonkey v. C., B. & Q. R. Co.*, 40 Iowa 205; *Kinyon v. Chicago & N. W. R. Co.*, 118 Iowa 349; *Rutherford v. Iowa Cent. R. Co.*, 142 Iowa 744; *Bruggeman v. Illinois Cent. R. Co.*, 154 Iowa 596; *Hartman v. Chicago, G. W. R. Co.*, 132 Iowa 582.

There were no surrounding facts or circumstances render-

ing this crossing extraordinarily dangerous, unless it be that it was not maintained in a reasonably safe and adequate condition. If the jury should find that the crossing was a reasonably safe and adequate farm crossing, then, in the light of our previous pronouncements, the rate of speed as pursued by this train, in the open country as this crossing was, could in no event be deemed excessive. The instruction permits the jury to find the rate of speed of the train to be excessive "under the conditions that existed," whatever they were. In this way, the jury were permitted to find negligence on the part of the defendant by reason of the excessive speed, regardless of what they might find to be the condition of the crossing. We hold that, under the record, the submission to the jury of the question of the excessive speed of the train was error.

The court submitted to the jury Grounds (c) and (d); in the language hereinbefore quoted. We think that it was error for the court to submit to the jury said grounds of negligence  as pleaded. The doctrine of last clear chance is not applicable when the defendant, in the exercise of reasonable care and caution, should have known of the plaintiff's peril, but only when he has actual knowledge of said peril, and fails to use due care to avoid the injury, which, by the exercise of due care, after acquiring the knowledge, could have been avoided. *Carr v. Inter-Urban R. Co.*, 185 Iowa 872; *Waters v. Chicago, M. & St. P. R. Co.*, 189 Iowa 1097; *Stanoshek v. Chicago, R. I. & P. R. Co.*, 198 Iowa 62; *Radenhausen v. Chicago, R. I. & P. R. Co.*, 205 Iowa 547. Many other cases could be cited on this proposition. The pleading states: "After they knew, or should have known, that the tractor and threshing machine were stalled on the track." The time of acquiring the knowledge, or when they should have acquired the knowledge, for aught that appears in the pleading, may have been at the time of the giving of the signal, or knowledge which was previously or subsequently acquired, or should have been previously or subsequently acquired. There is no allegation that, after the employees in charge of the train actually knew of plaintiff's predicament at the crossing, there was a failure to exercise due care to avoid the collision, which failure caused the injury. It is alleged in each of said grounds, in substance, that nothing was done to stop the train; but plaintiff's

own evidence shows that something was done in that regard.

Plaintiff, in his argument, is not contending for the application of the doctrine of last clear chance, but that the defendant's employees, after they saw the signal, failed to exercise ordinary care in stopping the train. If the plaintiff had pleaded that, after the employees in charge of the train saw the signal, they failed to exercise ordinary care in the stopping of the train, which failure caused the injury, he would have had the issue for which he contends in argument. The burden would then be upon him to establish, by proof, that the defendant's employees, after receiving the signal, could, in the exercise of ordinary care, have stopped the train before it arrived at the crossing.

Since we hold that there was error in submitting to the jury said grounds of negligence as pleaded, we refrain from making pronouncement as to whether the evidence is sufficient to justify the submission of the question argued by the appellee, had it been pleaded.

We refer to another error at this point. The petition alleges: "But, on the contrary, the engineer in charge of said train abandoned the engine, and jumped from the train." This allegation is not the statement of an ultimate fact, but was evidentiary in character; yet, the allegations of negligence being submitted in the manner as aforesaid, if the jury found that the engineer alighted from the train, according to the uncontradicted evidence, then they were permitted to return a verdict for the plaintiff, when perhaps they might have found, as testified to by the engineer that he had done everything possible to stop the train before alighting therefrom.

The defendant complains of the submission to the jury of the following language in Ground (a), hereinbefore quoted: "That the planks laid on each side of the rail of the crossing were not of sufficient strength." There is no evidence tending to establish said allegation, and it should not have been submitted. The issue at this point was as to whether or not the crossing maintained was a reasonably safe and adequate crossing for farm purposes.

The court, in one of the instructions, told the jury that the plaintiff, in attempting to cross the tracks in the manner he usually moved his machinery, or hauled it from one job to an-

 other, would not be guilty of negligence, unless he knew there was danger in doing so, etc. In this there was error. The criterion by which to determine whether there is negligence is as to whether or not the person exercised the same care, prudence, and caution which an ordinarily careful and prudent man would have exercised under the same circumstances.

In Instruction 12, the jury were instructed that the plaintiff would not be guilty of contributory negligence in failing to make  request for flag protection, unless he had knowledge that a rule of the company required the section foreman to furnish such protection, when requested. At this point we find no error of which the defendant can complain.

The defendant also complains of Instructions 13 and 14, relative to the negligence as alleged in Grounds (c) and (d), hereinbefore quoted; but, in view of what we have heretofore said regarding the submission of said grounds, further pronouncement on our part would be useless.

The defendant also made a number of requests for instructions. While we think the court would have been warranted in giving some of them, yet it cannot be said that the propositions were not sufficiently covered by those given by the court, and we find no reversible error at this point.

For the reasons hereinbefore given, the judgment of the trial court is hereby reversed, and the cause remanded.—*Reversed and remanded.*

STEVENS, C. J., and DE GRAFF, ALBERT, and MORLING, JJ., concur.