HARLEY E. SIMMONS, Administrator, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

No. 42365.

FEBRUARY 6, 1934.

REHEARING DENIED MAY 19, 1934.

. G. L. Norman, and J. G. Gamble and A. B. Howland, for appellant.

E. W. McManus, for appellee.

KINDIG, J.—On April 29, 1932, at about 5:20 o'clock in the afternoon, a gas-electric motorcar train operated by the defendant-appellant, the Chicago, Rock Island & Pacific Railway Company, collided with a light Chevrolet truck driven by Floyd H. Simmons at a highway crossing southeast of Farmington, Iowa. This crossing is just beyond the town limits. The appellant's right of way extends through the town of Farmington in a northwesterly and southeasterly direction. Highway No. 3, a paved thoroughfare, extends across the railway tracks and right of way in an easterly and westerly direction immediately south of Farmington.

At the time of the collision, the motorcar train was traveling from Farmington southward over Highway No. 3, and Floyd H. Simmons was driving the Chevrolet truck westward on Highway No. 3 across the railway tracks. There was a collision between the truck and the train, in which Floyd H. Simmons was killed. Harley E. Simmons was then appointed administrator for the estate of Floyd H. Simmons, and, as such, on August 31, 1932, commenced the present action, as plaintiff, against the railway company to recover damages for the wrongful death of Floyd H. Simmons. That action resulted in a judgment against the appellant railway company and in favor of the plaintiff-appellee. Consequently the appellant appeals.

As a basis for recovering damages from the appellant, the appellee alleged several grounds of negligence in his petition. The district court, however, submitted only three of those grounds of negligence to the jury. They were: First, that the appellant operated its motor train at a negligent rate of speed "in view of the nature of the crossing and obstructions to the view and hearing"; second, that the appellant failed to give statutory signals and warnings; and,

third, that the employees in charge of the appellant's motor train failed to keep a proper lookout.

Our discussion here will relate to the third ground of negligence above mentioned. Because a new trial is necessary, we refrain from discussing the sufficiency of the evidence on the appellant's negligence, as well as the record relating to the contributory negligence of the appellee's intestate. Error is assigned by the appellant upon the theory that there was no evidence in the record which justified the submission to the jury of the third ground of negligence above listed, to wit, that the appellant, through its employees, failed to keep a proper lookout.

Of course, as a general proposition of law, it is true that there is a duty imposed upon the appellant, while operating its trains, to keep a proper lookout through its employees: Hartman v. Chicago Great Western Railway Co., 132 Iowa 582, 110 N. W. 10; Ressler v. Wabash Railway Co., 152 Iowa 449, 132 N. W. 827; Thomas v. Chicago, Milwaukee & St. Paul Railway Co., 103 Iowa 649, 72 N. W. 783, 39 L. R. A. 399; Monson v. Chicago, R. I. & P. Railway Co., 181 Iowa 1354, 159 N. W. 679; Glanville v. Chicago, Rock Island & Pacific Ry. Co., 196 Iowa 456, 193 N. W. 548; Anderson v. United States Railway Administration et al., 197 Iowa 1, 196 N. W. 584. These cases, however, do not apply to the record in the case at bar. Here the evidence reveals that the appellant, through its engineer, kept a constant lookout from the time the motor train left the depot until the collision. There is no testimony upon this subject except that given by the engineer. He testified that as he left the station at Farmington he had a view of the crossing for a distance of approximately 400 feet on the right side of the motor train. On the opposite, or left, side of the motor train, the view was less. The engineer said he could not see the crossing from that side until he arrived at a point approximately 300 feet from it.

As the engineer was operating his train southward from the depot, he says that he constantly kept a lookout. According to the engineer, he did not see the light truck operated by Floyd H. Simmons until it was approaching at a point about 100 feet east of the crossing. At that time, the motor train, according to the engineer, was also 100 feet from the crossing. When the motor train was approximately 500 or 600 feet from the crossing, the engineer observed another automobile on the west side of the railroad track, traveling eastward. This automobile was carefully observed by the

engineer. Before crossing the railroad tracks, the operator of that automobile stopped and looked at the on-coming train. He then started his automobile and drove over the track when the train was approximately 300 feet away. After the automobile thus proceeded on the highway across the railroad crossing, it then went eastward in the direction from which Floyd H. Simmons was driving the light Chevrolet truck. In fact, the automobile which came from the west passed the Simmons' car several feet east of the railroad crossing.

Immediately after the engineer observed that the automobile which came from the west was safely over the railroad crossing, he then looked to the east, or left, and saw the light truck in which Simmons was riding. The Simmons truck, when first observed, by the engineer, was 100 feet east of the crossing. According to the evidence, the Simmons truck was traveling at a rate of speed ranging from 25 to 30 miles per hour. During this time, the train, according to the appellee's evidence, was traveling from 35 to 40 miles per hour. It was said by the engineer that he could stop the train at the time in a distance of approximately 400 feet. When estimating the speed of the motor train, the engineer fixed the rate at 30 miles per hour. But whether the motor train was traveling at the rate of 30 miles per hour, as claimed by the engineer, or at the higher rate of from 35 to 40 miles per hour, as claimed by the appellee, becomes quite immaterial, for, under the record, it cannot be said that the engineer did not keep a proper lookout when proceeding from the depot in Farmington to the crossing where the accident occurred. Frequently automobile drivers propel their vehicles to a point near the railroad tracks before stopping for the crossing. Engineers constantly observe operations of that kind. So, when an engineer observes an on-coming automobile traveling at the rate of from 25 to 30 miles an hour, he may not detect, under the facts of this case, the peril of the occupants of the car until it is within 100 feet of the railroad track. Williams v. Mason City & Ft. Dodge Railroad Co., 205 Iowa 446, 214 N. W. 692; Albright v. Chicago, R. I. & P. R. Co., 200 Iowa 678, 205 N. W. 462; Vreeland v. Chicago, M. & St. P. R. Co., 92 Iowa 279, 60 N. W. 542; State ex rel. North Dakota Workmen's Compensation Board v. Great Northern R. Co., 54 N. D. 400, 209 N. W. 853, 859. The North Dakota court, in the Workmen's Compensation case, said:

"Those engaged in the operation of railway trains are not bound to anticipate that drivers of automobiles and trucks upon the

highways will be guilty of negligence in approaching crossings without taking reasonable measures to ascertain the approach of a train. If the rule were otherwise, the last clear distance doctrine would require the trainmen, at the peril of being held responsible for an accident, to slow down every time they should observe an on-coming motorist in a position where, if he did not see the train, he might negligently collide with it."

Of course, if the grade were a sharp downward incline, or if the speed of the automobile were excessive, a different situation might arise. Likewise, the weight and make of the truck or other vehicle must be taken into consideration. But under the facts and circumstances of this case, considering the grade of the highway and the speed of the Chevrolet truck, a jury could not say that the engineer on the motor train should have discovered the peril of Floyd H. Simmons at a distance farther east than 100 feet from the crossing. As the highway approaches the railway track from the east, it is upgrade. Even the witnesses for the appellee testified that the Chevrolet truck could have been stopped, under the circumstances, within a distance of from 50 to 100 feet.

Immediately after the engineer on the motor train observed the Chevrolet truck at a point 100 feet east of the railway tracks, he thought the driver of the truck would not stop, and he then applied the emergency brakes and attempted to stop the train as quickly as possible. There is nothing in the evidence to indicate that the engineer should have observed the Chevrolet truck sooner, or, after observing it, should have sooner realized that the driver of the truck would not stop before crossing the railroad tracks. Under that state of the record, it was error to submit that issue to the jury. In no event can the trial court submit to the jury an issue raised by the petition if the evidence does not support the same. Graves v. Chicago, R. I. & P. R. Co., 207 Iowa 30, 222 N. W. 344; Gross v. Humke Sanitary Bakery, 209 Iowa 40, 227 N. W. 620; Cresswell v. Wainwright, 154 Iowa 167, 134 N. W. 594; Stout v. Chicago, R. I. & P. Ry. Co., 198 Iowa 1017, 200 N. W. 596; Douda v. Chicago, R. I. & P. Ry. Co., 141 Iowa 82, 119 N. W. 272; Veith v. Cassidy, 201 Iowa 376, 207 N. W. 328.

When referring to a similar question, we said, in Graves v. Chicago, R. I. & P. Ry. Co., supra, reading on page 36:

"The evidence fails to establish the fact that those in charge

of the train were, not keeping a lookout, and if the pleader intended by said allegations to allege the failure to keep a lookout or flagman at said crossing, the conditions were not such as to require the defendant to do so. * * * Thus it is manifest that it was error on the part of the court to submit said ground of negligence to the jury."

Moreover, in order to recover on the basis of negligence, it is necessary for the appellee to prove that the alleged negligence was the proximate cause of the accident. There must be some causal connection between the act of negligence and the resulting damages. McDowell v. Interstate Oil Co., 208 Iowa 641, 224 N. W. 58; Hogan v. Nesbit, 216 Iowa 75, 246 N. W. 270.

As we apply that rule to the facts in the case at bar, its significance becomes apparent. Certainly it cannot be successfully argued by the appellee that it was necessary for the engineer on the appellant's train to observe the Chevrolet truck a greater distance east of the crossing. Assume, for the purpose of discussion, that the engineer saw the truck, not at 100 feet, but at 150 feet, east of the railroad tracks. If the engineer had thus observed the Chevrolet truck at a distance of 150 feet, as assumed, east of the crossing, and had then immediately applied the brakes, he could not have stopped the train because, under the testimony, it required at least 400 feet to do that. Nothing is pointed out in the evidence that would indicate the extent to which the train would have slackened its speed had the brakes been applied when the Chevrolet truck, as assumed, was 150 feet east of the crossing. In other words, there is nothing to show that the failure of the engineer to earlier observe the Chevrolet truck and detect its peril was the cause of the collision.

Under all the circumstances, therefore, it is evident that the district court should not have submitted this issue to the jury. Manifestly no evidence supports the issue, and the appellee has not demonstrated that the appellant was not prejudiced by the error in the submission of the issue. Graves v. Chicago, R. I. & P. R. Co., (207 Iowa 30, 222 N. W. 344), supra.

Wherefore, the judgment of the district court must be, and hereby is, reversed.—Reversed.

CLAUSSEN, C. J., and EVANS, ALBERT, and DONEGAN, JJ., concur.